429 So.2d 1322 (1983)
David Eric WALSTON and William M. Bartleman, Appellants,
v.
FLORIDA HIGHWAY PATROL; Department of Highway Safety and Motor Vehicles; Robert L. Holder, Individually; and Jim Wilson, Individually, Appellees.
No. 82-657.
District Court of Appeal of Florida, Fifth District.
April 20, 1983.
*1323 Stephen P. Kanar, Orlando, for appellants.
Joseph E. Foster and Roland A. Sutcliffe of Akerman, Senterfitt & Eidson, Orlando, for appellees.
COBB, Judge.
The appellants, David Eric Walston and William M. Bartleman, were plaintiffs below against the Florida Highway Patrol, Department of Highway Safety and Motor Vehicles (FHP). After the jury verdict,[1] the trial judge granted a defense motion for judgment in accordance with its previous motion for directed verdict pursuant to Florida Rule of Civil Procedure 1.480(b). The judgment then entered for the defendant, FHP, and against Walston and Bartleman, is the subject of this appeal.
The evidence at trial showed that the plaintiffs were injured during the process of a police stop when a third car, driven by a man named Castillo, struck the rear of the police car, propelling it into Bartleman's car, which was parked some eight to ten feet in front of it. Walston and Bartleman, and the two arresting officers, were standing between the cars at the time of collision and suffered severe leg injuries from the crash.
At the trial, Bartleman testified that he was pulled over by a state trooper for speeding. It is uncontroverted that both Bartleman and Walston, his passenger, were intoxicated. Bartleman pulled his car close to the curb on the right side of the road; the police car, with its headlights and emergency lights on, and with blue lights flashing, stopped from six to ten feet behind Bartleman's car.
The arresting officer, Trooper Holder, led Bartleman to the area between the two cars for a field sobriety test. Bartleman failed the test and was told he was under arrest. Holder then went back to his patrol car to use his radio, leaving Bartleman standing between the cars. In the meantime, Walston, the other occupant, had stepped out of *1324 the car on its right side into a grassy area beside the road. He was requested to do so by the auxiliary patrolman, Wilson, who was riding with Holder. Walston admittedly was even drunker than Bartleman, and obviously could not drive the car. He was not arrested, and was told to leave, being given directions on how to return (apparently by foot) to his naval base. He did not leave, but followed Wilson into the area between the cars where Bartleman's sobriety test was held. Just as Holder returned from his car to the test area, and began a conversation with the other three, the collision occurred.
Trooper Holder testified that he conducted the field sobriety test in the area between the two cars because it was paved with no obstructions to walking. Holder said he did this to avoid any problem at a subsequent drunk driving trial. There was other traffic on the road, and Holder himself nearly was hit by a passing car as he walked back to his own car. At no time had either trooper warned Bartleman or Walston about the danger of standing between the two cars.
The issue is whether or not the trial judge erred in attributing the sole cause of the accident to the third car driven by Castillo as an intervening cause. The question, then, is whether or not the intervening cause was unforeseeable as a matter of law, justifying judgment by the court contrary to the jury verdict. See Nunziato v. P & L Auto Parts, Inc., 403 So.2d 1031 (Fla. 3d DCA 1981); Pope v. Cruise Boat Co., Inc., 380 So.2d 1151 (Fla. 3d DCA 1980).
The argument of the appellee attempts to avoid this issue by conceding that foreseeability is a jury issue, but contending that this issue does not arise in the absence of any negligence on the part of the defendant or its agents, Holder and Wilson. In other words, the appellee asserts that the trial judge reached the right result for the wrong reason.
We agree that, in the absence of initial negligence on the part of the defendant, it is irrelevant to talk of intervening causation. It is readily apparent that, given initial negligence on the part of the defendant, the issue of the foreseeability of the intervening negligence of Castillo presented a jury issue. See Gibson v. Avis Rent-A-Car Systems, Inc., 386 So.2d 520 (Fla. 1980). The true question, then, is whether or not a jury issue was presented in regard to the existence of any causative negligence on the part of Troopers Holder and Wilson.
The record reveals that Trooper Holder admitted that he was taught not to allow people to stand between cars during highway stops; furthermore, he had expressed (to himself) concern for the safety of Bartleman and Walston when he saw them standing between the cars after he had used the radio; Holder initially led Bartleman between the two cars; neither Bartleman nor Walston, both of whom were drunk, was ever warned by either arresting trooper about the danger. These facts were sufficient for submission of the case to a jury, and it was error for the trial judge to supersede the verdict.
The judgment is reversed, and the cause remanded for entry of a judgment in accordance with the jury verdict.
REVERSED and REMANDED.
COWART, J., concurs in part and dissents in part.
JOHNSON, CLARENCE T., Jr., A.J., concurs specially with opinion.
COWART, Judge, concurring in part; dissenting in part:
I agree with the majority opinion as it relates to Bartleman but not as to Walston. The police officers did not cause appellants' injuries. The injuries were caused by Castillo's vehicle striking the parked police vehicle causing it to strike appellants and causing their injury. Therefore, the true issue in this case, in my opinion, is not, as the majority says, whether Castillo's crashing his vehicle into the rear of the stopped police vehicle was an intervening cause, foreseeable as a matter of law, but what duty, if any, did the police officers owe, *1325 what was that duty, upon what was that duty based and to whom was it owed. The consideration of anything as an "intervening" cause presupposes or assumes negligence on the part of some other actor, which negligence must include the breach of some duty.
Although both appellants appear to be identically situated, i.e., both were injured while intoxicated in the same manner in the same accident and at the same time and place; nevertheless, there is a substantial, controlling difference in the duty that the police officers owed to each and, hence, in appellees' liability. Like everyone else, police officers are liable for negligence only when they neglect some legal duty they owe to someone else to use due care. A person who is more knowledgable, alert and perceptive of danger owes no duty, by virtue of that fact alone, to warn a less knowledgable, less alert and less perceptive citizen. Duty does not arise from foreseeability alone, otherwise those with greater foresight would have to spend all of their time warning those with less foresight of dangers or risk liability for their failure. The fact that one realizes, or should realize, that an affirmative act on his part is necessary for another's protection does not itself impose upon him a legal duty to take such action.[1] This is one of the differences between law and morals and however much this principle offends the morals of some it is still a good legal principle. Therefore, merely because Trooper Holder had special training which may have caused him to have a superior ability to perceive a dangerous circumstance and appellants' ability to appreciate a dangerous situation was reduced because of their intoxication, does not per se establish a duty although those facts may well be important factors to consider in deciding what action is necessary to reasonably and adequately meet a duty of care when it does exist.
Did the police officers in parking the police car directly behind Bartleman's stopped vehicle create a dangerous condition that created in them a duty to warn appellants? The parties argue extensively about whether or not the police were negligent (1) in parking behind Bartleman's vehicle and (2) in "allowing" appellant's "to stand between the two stopped vehicles," because both acts were contrary to some law enforcement practices and standards. Actually the dangerous situation (the unreasonable risk of harm) in this case was not created by the police vehicle stopping directly behind Bartleman's stopped vehicle or by the police vehicle stopping at all. It is just as likely and foreseeable that Castillo or someone else might run into the police car and knock it into or over anyone standing in front of the police car whether or not the police car was knocked into Bartleman's vehicle. The likelihood and foreseeability of an enhanced injury resulting from a cause does not increase the likelihood of the cause. Likewise, neither the police vehicle being stopped nor appellants standing in front of it caused, or increased, the danger or its foreseeability. There is no suggestion or proof that the parked police vehicle in some way caused Castillo's vehicle to strike the police vehicle. The danger or risk of harm was not in standing in front of the stopped police vehicle but in merely standing or being on foot in front of the curb and on and in a busy highway at night. Any person standing exactly where appellants stood when injured would have been injured because they would have been struck by Castillo's vehicle. Indeed, they would have been injured worse if directly struck by Castillo's vehicle than when struck by the parked police vehicle which itself was struck by Castillo's vehicle because the weight and mass of the parked vehicle absorbed some of the energy of Castillo's moving vehicle. A person, including a policeman, does not owe a legal duty to warn another of the danger of standing in a highway at night merely because the first person may have stopped a vehicle there and this is true even though the first possesses more ability to foresee or apprehend the danger of a traveling vehicle striking a person or object in the road. If the police *1326 owed no duty to warn of danger because of their superior ability to recognize the danger of standing in a busy highway at night because of their training and sober condition when appellants' faculties were impaired by alcohol, and the police owed no duty because of parking their vehicle on the edge of the road, did they have a duty at all? Trooper Holder owed a duty to Bartleman not because the officer had a greater capability to recognize the danger of standing in the highway and not because the parking of the police vehicle was a proximate cause of Bartleman's injuries but because when Bartleman was injured he was under arrest by Trooper Holder. Every citizen normally has the right to make decisions about where he is and will remain and has the duty to look out for himself by apprehending danger and avoiding it. However by virtue of an arrest the citizen loses that right and duty and the officer gains it. The officer is to be obeyed: "get out of the car;" "stand over here;" "get in the back of the police car;" "get out and go into the police station." With the police officer's new right to direct and control the arrestee comes a concommitant duty to care for his safety. That duty varies with the situation and the need. If a situation is dangerous and the arrestee's ability to comprehend and react are impaired the officer's duty is correspondingly increased. An officer who arrests and takes one into his custody, and under his direction and control, owes the arrestee a duty to use reasonable care for his safety and this duty reasonably includes the duty to not place the arrestee in, nor permit him to remain in, a place of foreseeable danger. The special relationship between the arresting officer and the arrestee gives rise to this duty to protect.[2] Accordingly, appellees' liability for breach of this duty to Bartleman properly went to the jury and the judgment on the defense motion for judgment (based on a previous motion for a directed verdict) should be reversed as to Bartleman. However, Walston, while intoxicated, was not under arrest and was free to make decisions as to his own location and safety. There was no special relationship between the arresting officers and Walston giving rise to a duty to warn or otherwise protect. In fact, as the majority opinion makes clear, Walston not only was free, he had been told to leave the area. He did not and was injured as a result of his own judgment and action in voluntarily leaving the grassy area beside the road and following Wilson into the road and between the parked vehicles where he was injured. When the claimed negligent conduct consists not of an affirmative act, but of the failure to do an act which is necessary for the protection of another, the act not done must be one which the alleged negligent party was under a duty to do.[3] The police officers were likewise themselves injured. Did Walston owe them a duty to warn them of the danger of being in a busy highway on foot at night? Why not? The answer is because Walston had no special relationship to the officers giving rise to a right or duty to tell the police what to do or to warn them of the dangerous situation that existed. Likewise, the police officers had no legal duty to interfere with Walston's freedom and no duty to warn him of an apparent danger not of their making. Accordingly, the final judgment in appellees' favor should be affirmed as to Walston.
JOHNSON, CLARENCE T., Jr., A.J., concurs specially with opinion.
I concur that a jury question was presented as to the negligence of the Defendants and that the jury verdicts should be reinstated.
The fact that Bartleman was under arrest and Walston wasn't, is not, in my view, decisive as to whether the officers owed a legal duty to Walston. Having stopped the vehicle Walston was riding in, removed him from the vehicle and proceeded to direct his movements, I believe the officers had a duty to use reasonable care for his safety consistent with the known hazards then *1327 present and Walston's known intoxicated condition.[1] Whether Walston's injuries were the result of a breach of duty owed by the officers to Walston or were due to a breach of duty Walston owed to himself, or both, were questions for the jury. The jury found both negligent. Considering all of the evidence before it, I believe the jury could legally make that determination.
NOTES
[1] The jury returned a special interrogatory verdict for each plaintiff. For Bartleman, the jury found the Florida Highway Patrol and the Department of Highway Safety and Motor Vehicles each 40% negligent, and Bartleman 20% negligent. For Walston, the jury found each defendant 10% negligent and Walston 80% negligent.
[1] See 2 Restatement of the Law, Second, Torts 2d, § 314 (1979).
[2] See 2 Restatement of the Law, Second, Torts 2d, § 314A(4) and Illustration 6 (1979).
[3] See 2 Restatement of the Law, Second, Torts 2d, § 284(b) (1979).
[1] Even absent a duty, one who voluntarily undertakes to act is under a legal duty to act with reasonable care. See e.g. Cox v. Wagner, 162 So.2d 527 (Fla. 3rd DCA 1964); Fidelity Life and Casualty Company of New York v. L.F.E. Corporation, et al., 382 So.2d 363 (Fla. 2nd DCA 1980).