509 So.2d 1213 (1987)
Glenn KAISNER and Barbara Kaisner, His Wife, Appellants,
v.
Gary Joseph KOLB, Dale Robert Jones, Pinellas County Sheriff's Department, and American Druggist Insurance Company, Foreign Corporation, and Dale Robert Jones, Appellees.
No. 85-2507.
District Court of Appeal of Florida, Second District.
July 1, 1987.
Rehearing Denied August 12, 1987.
*1214 Daniel C. Kasaris of Yanchuck, Thompson, Young, Berman & Latour, P.A., St. Petersburg, for appellants.
Jeffrey R. Fuller and Rex E. Delcamp of Williams, Brasfield, Wertz, Fuller & Lamb, P.A., St. Petersburg, for appellees.
Robert King High, Jr., and Robert M. Ervin, Jr., of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, amicus curiae by Academy of Florida Trial Lawyers, for appellants.
DANAHY, Chief Judge.
This is a tort action brought by Mr. and Mrs. Kaisner against two sheriff's deputies, the deputies' employer (Pinellas County Sheriff's Department), and the department's insurance carrier. The Kaisners' allegations of negligence were founded on conduct of the deputies which occurred while they were engaged in the stop of the Kaisner vehicle for an investigation of a violation of Florida's traffic laws. The trial court granted summary judgment upon the motion of the defendants which urged that, on the authority of Everton v. Willard, 426 So.2d 996 (Fla. 2d DCA 1983), the police conduct constituted a basic discretionary governmental function and was, therefore, immune from tort liability. We affirm after an analysis of the case law on sovereign immunity, particularly the cases of Commercial Carrier v. Indian River County, 371 So.2d 1010 (Fla. 1979), Trianon Park Condominium Association v. City of Hialeah, 468 So.2d 912 (Fla. 1985), Everton v. Willard, 468 So.2d 936 (Fla. 1985) (approving the decision of this court), and Avallone v. Board of County Commissioners, 493 So.2d 1002 (Fla. 1986).
Mr. and Mrs. Kaisner were driving their pickup truck along a major street in St. Petersburg in clear weather at approximately 5:30 p.m. on June 29, 1979. The two deputies were following the Kaisners. The deputies pulled the Kaisners over and stopped them in the curb lane of the street because the deputies suspected them of violating a traffic law. Deputy Kolb, the driver of the sheriff's patrol car, stopped his vehicle in the curb lane, approximately one to one-and-a-half car lengths behind appellants' vehicle. The deputy, who had used his siren and flashing lights to indicate to Mr. Kaisner to pull over, left the *1215 lights on top of his vehicle flashing throughout the stop and ensuing investigation. When he was stopped, Mr. Kaisner, without an order to do so, exited his truck and walked between the two vehicles. At the same time, the other officer in the patrol car, Deputy Jones, exited from the passenger side and after receiving the registration and license from Mr. Kaisner, indicated to him that he was not to approach any closer. Deputy Jones got back into the passenger side of the patrol car and handed the license and vehicle registration to Deputy Kolb who started to check them on his onboard computer. At that point, Deputy Jones again exited the patrol car moving toward Mr. Kaisner as Mr. Kaisner began again moving toward the deputy to ask why he had been stopped. At that moment, no more than three minutes after the stop, the patrol car was struck from the rear by another vehicle. The force of the crash propelled the patrol car forward, causing it to strike Mr. Kaisner and Deputy Jones, who were between the two vehicles.
In their complaint Mr. and Mrs. Kaisner alleged that the deputies were negligent while acting within the course and scope of their employment in their use and operation of the police patrol car, as well as in their failure to use proper police procedure in conducting a nonemergency traffic stop.[1] The trial court granted summary judgment in favor of all defendants based upon the doctrine of sovereign immunity. We find that, because of the nature of the police conduct, the defendants in this suit were absolutely immune from tort liability. Because that is so, no cause of action was stated against them; thus, the trial court lacked subject matter jurisdiction in this case.[2]
Dealing as we do with the issue of sovereign immunity, we follow the dictates of our supreme court in Trianon Park. There the court directs us to apply the operational/planning analysis and the principles of Evangelical Brethren [Evangelical United Brethren Church of Adna v. State, 67 Wash.2d 246, 407 P.2d 440 (1965)] as adopted in Commercial Carrier. 468 So.2d at 917-18. The court reminds us that it has not receded from Commercial Carrier. 468 So.2d at 923. Evangelical Brethren provides us four questions to aid us in determining whether a particular act, omission or decision of a governmental entity is discretionary. But, before we need even consider these four questions, Trianon Park reminds us of certain fundamental principles regarding governmental tort liability. Among these principles is that the enactment of section 768.28, Florida Statutes (1975), created no new duty of care for governmental entities. Rather, the statute merely waived the immunity which prevented recovery for breaches of existing common law duties of care to the end that the identical existing duties of care for private persons apply to governmental entities. Id. at 917. Moreover, the court's decision in Commercial Carrier
did not discuss or consider conduct for which there would have been no underlying common law duty upon which to establish tort liability in the absence of sovereign immunity. Rather, we were dealing with a narrow factual situation in which there was a clear common law duty absent sovereign immunity. We expressly recognized that there were areas of governmental activity where "orthodox tort liability stops and the act of governing begins," 371 So.2d at 1018, *1216 citing Evangelical Brethren, 67 Wash.2d at 253, 407 P.2d at 444, as well as the "distinct principle of law ... which makes not actionable in tort certain judgmental decisions of governmental authorities which are inherent in the act of governing". 371 So.2d at 1020.
Trianon Park, 468 So.2d at 918 (emphasis added).
In deciding the threshold question whether there is an existing duty on the part of the governmental entity, the breach of which might impose liability (and, therefore, to which the affirmative defense of sovereign immunity might be addressed), Trianon Park, adding to the Commercial Carrier analysis, provides us with a framework of four categories in which to place governmental functions and activities. These four categories are:
I. Legislative, permitting, licensing and executive officer functions.
II. Enforcement of laws and protection of the public safety.
III. Capital improvement and property control functions.
IV. Providing professional, educational and general services.
Trianon Park, 468 So.2d at 919-921. As the court teaches us, the functions in the first category never carried a common law duty because these actions are inherent in the act of governing. Id. at 919 and cases cited therein. In the second category, the court gave as the most notable example of this discretionary power: that given to judges, prosecutors, arresting officers, and other law enforcement officials, as well as the discretionary authority given fire protection agencies. Id. (emphasis added). Within the second category the court further distinguished activities such as the "existing common law duties of care applicable to the same official or employees in the operation of motor vehicles or the handling of firearms during the course of their employment to enforce compliance with the law." Id. at 920. With the waiver of sovereign immunity, persons injured by alleged negligent acts of government employees in the performance of these latter acts may sue the governmental entity employing the alleged negligent actor. Id.; City of Daytona Beach v. Palmer, 469 So.2d 121 (Fla. 1985) (decision on how to fight a fire is discretionary, nontortious immune activity; conduct in driving firefighting equipment to scene of fire or personal injury to spectator from negligent handling of equipment at scene is actionable).
Categories III and IV, on the other hand, said the court, may carry liability depending on the nature of the act, not the status of the actor. It is when the act falls within either category III or IV that resort to the test of Evangelical Brethren is appropriate. This test is used
to determine what conduct constitutes a discretionary planning or judgmental function and what conduct is operational for which the governmental entity may be liable. Prior to the enactment of section 768.28, sovereign immunity for all governmental entities, including the state and all of its agencies and subdivisions, remained in full force except for the proprietary and special duty exceptions carved out by this Court. Section 768.28 waived governmental immunity for most government activities where there had been an underlying common law duty of care. The waiver was intended to be broad in its coverage, but clearly was not intended to create causes of action for activities that are inherently governmental in nature.
Trianon Park, 468 So.2d at 921.
According to this analysis, our first task is to determine into which of the above four categories the acts in the instant case fall. The answer is category II, enforcement of laws and protection of the public safety. There is no dispute that the deputies had reason to believe that a state traffic law was being violated. It was appropriate police work to then investigate further, which they did by pulling appellants over. The stopping of appellants' truck in the curb lane of the roadway, and the placement of their own vehicle to the rear of the truck were tactical decisions made by the deputies based on their training and experience as law enforcement officers. *1217 We are supported in this conclusion by the language of Everton v. Willard, 468 So.2d at 939 citing Wong v. City of Miami, 237 So.2d 132, 134 (Fla. 1970) ("sovereign authorities ought to be left free to exercise their discretion and choose the tactics deemed appropriate without worry over possible allegations of negligence"). Deputies Jones and Kolb had not yet arrested nor taken anyone into custody, they were merely in the midst of a proper investigation, checking out the license and truck registration numbers which might have led to an arrest or the issuance of a citation depending on the results of the computer check. Because we conclude that the deputies' actions fall within category II of governmental functions, the question of duty and corresponding liability do not arise because the government is not liable for these inherent acts of governing. The issue of sovereign immunity as a defense to any possible liability likewise does not arise in this situation because there is no preexisting common law duty that a private person could have owed. There simply is no cause of action for this type of law enforcement function.
Reddish v. Smith, 468 So.2d 929 (Fla. 1985), released on the same day as Trianon Park and Everton v. Willard, supports our conclusion as well. The supreme court in Reddish v. Smith directed the trial court to affirm its dismissal of the complaint based on sovereign immunity for a discretionary-level activity. The court stated that even had it concluded that the decision to reclassify a prisoner to a minimum security facility was an operational-level function,[3] the defendants would still be shielded from liability and the dismissal of the complaint would be proper because the waiver of sovereign immunity statute "created no new causes of action not previously recognized by common law principles of tort responsibility." Id. at 932. Specifically the court stated:
[R]ecovery is to be allowed only to the extent that such is available against a private person for the same kind of conduct as that committed by a state employee and charged as being tortious. Thus, where a Department of Corrections driver negligently operates his van while transporting prisoners thereby causing a collision resulting in injuries to another, a body of tort law exists by which liability can be established based *1218 on the negligent conduct of the driver. This kind of activity is covered by the waiver of sovereign immunity. But the decision to transfer a prisoner from one corrections facility to another is an inherently governmental function not arising out of an activity normally engaged in by private persons. Therefore the statutory waiver of sovereign immunity does not apply.

Reddish v. Smith, 468 So.2d at 932 (emphasis added). So, too, under the instant facts, do we have the deputies engaging in an activity not normally engaged in by private persons. The waiver of sovereign immunity statute, therefore, does not enter into the picture.
The actions of the deputies in the case before us cannot be likened to the liabilityengendering operational activities of category II functions mentioned in Trianon Park, Reddish v. Smith, and City of Daytona Beach v. Palmer (operation of motor or fire vehicles). If Deputy Jones had arrested or taken Mr. Kaisner into custody for some reason, and had been transporting him elsewhere in the deputies' vehicle, and then been negligent in driving the patrol car, a cause of action would have been stated, and sovereign immunity as a defense would have been waived. The mere stopping of the vehicle for a traffic law violation and further investigation does not constitute a "taking into custody." That is so even though the deputy spoke to appellant and indicated that appellant should not approach closer. Generally, placement of the patrol car as was done here is accomplished for the very protection of the stopped vehicle and is certainly a common and reasonable action in these circumstances. Deputies Kolb and Jones had not completed their investigatory activities  which we deem were a part of the discretionary, judgmental and sovereign powers of government granted police offices in enforcing the law  when the injury to appellants occurred. Everton v. Willard. In the pre-Trianon Park case of Walston v. Florida Highway Patrol, 429 So.2d 1322 (Fla. 5th DCA 1983), our sister court reversed and remanded for a judgment in accordance with a jury's finding of negligence on the part of an investigating officer. The plaintiff/appellant in Walston was the drunken passenger of the car the officer had stopped but which passenger the officer did not arrest after ordering him out of the car. The passenger had remained between his own vehicle and the officer's patrol car when the patrol car was rammed from behind, a scenario similar to that in the case before us. We respectfully disagree with the result reached by the fifth district in Walston. There the majority assumes that the mere stopping of a vehicle to investigate a possible drunken driver creates a duty on the part of the officers toward a person whom the officers did not arrest and, in fact, whom the officers had told to leave the scene. Judge Cowart's dissent in Walston properly analyzes the legal questions, the first of which is: "Is there a duty of care owed?" Only after this question is answered in the affirmative can the subsequent questions of breach of that duty and proximate cause be considered.[4] A more fundamental question in the Walston analysis would have determined whether the conduct of the deputies had crossed that threshold we find must be crossed when dealing with a governmental entity. The governmental entity acts either in the sphere of governing (Trianon Park's categories I and II) where its actions are immune[5] or in the other sphere where it may possibly act as a private person in like circumstances to incur liability. It is only when this threshold is crossed, leaving behind the inherent acts of governing, can a traditional negligence analysis be undertaken and applied to conduct later determined to be operational level, and not planning level, using the suggested *1219 analysis of Evangelical Brethren as outlined in Trianon Park.
Further, we do not find liability predicated on the recent case of State of Florida, Department of Highway Safety v. Kropff, 491 So.2d 1252 (Fla. 3d DCA 1986), wherein liability existed based on actions of a patrolman in failing to secure the scene of a traffic collision. There the plaintiff Kropff was struck by another car as she stood on the right-of-way with the patrolman as they surveyed the damage to her car which had collided with another car. The patrolman in Kropff had left his car on the other side of the median which ran down the middle of the boulevard where the accident occurred. Deputies Kolb and Jones, in the case before us, had followed standard police routine in stopping the vehicle and proceeding with their investigation. They had not yet left their discretionary-level activities in deciding whether to arrest or cite Mr. Kaisner and had not yet entered the operational-level sphere of activity which was the case in Kropff. Furthermore, unlike the facts in Kropff, deputies Kolb and Jones were dealing with the individual who, they believed, had committed a traffic violation. Mr. Kaisner was the object of their investigation and whom, in their discretion, they might arrest based on the results of that investigation. The officer in Kropff was making out his accident report at the scene of an accident that had already occurred and at which he had taken charge. We find this to be a further distinction between the two cases. Had our deputies arrested appellant or exercised actual control of appellant at the time he was injured, then Kropff would apply, the conduct would be operational in nature and, therefore, actionable.
We decline to accept appellants' further contentions that a common law duty arose on the part of the deputies toward Mr. Kaisner by applying section 314A of the Restatement (Second) of Torts (1979) to the facts of this case. Section 314A(4) states:
One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the others [as are common carriers to their passengers, innkeepers to their guests and possessors of land to their public invitees].
Mr. Kaisner, unlike the deputies, was facing and observed the oncoming traffic. He was certainly not deprived of his "normal opportunity for [self-]protection" and was not in any way required to stay between the vehicles by the instructions of Deputy Jones. The only direction from Deputy Jones was a cautionary one for Mr. Kaisner to come no closer to the officers, an understandable comment considering the hazards of police work at the scene of an investigation. It is common knowledge that wanted felons and other potentially dangerous persons are often discovered during such routine traffic investigations. There was no common law duty of care even using the Restatement principles under the circumstances here.
Our inquiry is not ended yet. Appellants further contend that even though we should find that the deputies' conduct is not actionable, the case is nevertheless controlled by the recent supreme court case of Avallone v. Board of County Commissioners, 493 So.2d 1002 (Fla. 1986). Avallone held that "when liability insurance is purchased, there will be no assertion of sovereign immunity, up to the coverage limits of the policy, regardless of whether such defense would be otherwise valid. § 286.28(2)." Id. at 1004. Although we are dealing with the purchase of liability insurance by the Sheriff of Pinellas County pursuant to section 30.55, Florida Statutes (1979), rather than pursuant to section 286.28(2), the reasoning of Avallone is applicable. Jozwiak v. Leonard, 504 So.2d 1260 (Fla. 1st DCA 1986). After careful scrutiny of Avallone, we find that it is not dispositive of the instant case.
Avallone dealt mainly with reconciling the general waiver of sovereign immunity statute, section 768.28, and the authority given to political subdivisions of the state by section 286.28 to purchase liability insurance to cover them for torts committed by their employees when acting within the *1220 scope of office or employment.[6] The trial court in Avallone found that the county was not immune from suit for the negligent operation of a county-owned park and swimming facility. The trial court, however, granted summary judgment in favor of the county because it found an intervening cause for the swimmer's injuries. The Fifth District Court of Appeal found that after the county decided to operate the swimming facility, the decision whether to staff the facility with supervisory personnel was a discretionary, planning-level activity for which sovereign immunity was effective despite the county's purchase of liability insurance. The supreme court reversed and found that the operation of the swimming facility was just that  an operational-level function for which sovereign immunity had been waived and for which liability insurance was available to recompense the petitioner for his injuries upon proof of his negligence claim against the county. The supreme court agreed with the petitioner in Avallone that its decision was necessarily grounded on Trianon Park. The court further emphasized that it had
addressed th[e] point in Trianon Park ... "that section 768.28, Florida Statutes (1975), which waived sovereign immunity, created no new cause of a action, but merely eliminated the immunity which prevented recovery for common law torts committed by the government." Trianon Park, 468 So.2d at 914... . A government unit has the discretionary authority to operate or not operate swimming facilities and is immune from suit on that discretionary question. However, once the unit decides to operate the swimming facility, it assumes the common law duty to operate the facility safely, just as a private individual is obligated under like circumstances.

Avallone, 493 So.2d at 1005 (emphasis added).
There is language in Avallone susceptible to the interpretation that the enactment of section 286.28 waived the defense of sovereign immunity even for discretionary, planning-level activities.[7] Given other language in the decision, however, such as the above quoted text on the continued viability of Trianon Park, and the facts of Avallone which the supreme court found to constitute nonimmune operational-level functions, we are convinced that our analysis is correct. The law enforcement activities of deputies Jones and Kolb were not activities which could possibly be performed by a private person in like circumstances and therefore did not even cross the threshold of acts for which the governmental entity might be liable in tort. Since the activities did not cross this threshold, sovereign immunity did not arise as an affirmative defense, and the purchase of liability insurance pursuant to the statute did not waive this defense "regardless of whether such defense would be otherwise valid. § 286.28(2)." Avallone, 493 So.2d at 1004. We cannot conceive that by purchasing liability insurance, the government has left itself open to suits grounded on the very act of governing. Trianon Park, as we read it, has foreclosed this result.
The order appealed from is therefore affirmed.
SCHOONOVER and LEHAN, JJ., concur.
NOTES
[1] We note that, because there were no allegations of bad faith, malicious purpose or wanton and willful acts in disregard of human rights, safety or property made against deputies Kolb and Jones, they were improperly joined as defendants in this suit. Section 768.28(9)(a) Fla. Stat. (1979); Comuntzis v. Pinellas County School Board, 508 So.2d 750 (Fla. 2d DCA 1987).
[2] That sovereign immunity relates to subject matter jurisdiction is settled precedent. Reddish v. Smith, 468 So.2d 929 (Fla. 1985) (affirming dismissal of complaint based on sovereign immunity); Sebring Utilities Commission v. Sicher, 509 So.2d 968 (Fla. 2d DCA 1987); Moore v. City of St. Petersburg, 281 So.2d 549 (Fla. 2d DCA 1973); Kirk v. Kennedy, 231 So.2d 246 (Fla. 2d DCA 1970). Accord, State of Florida, Department of Highway Safety & Motor Vehicles, Division of Highway Patrol v. Kropff, 491 So.2d 1252, 1254 n. 1 (Fla. 3d DCA 1986) (we distinguish Kropff on other factors infra); see also Chester v. Metropolitan Dade County, 493 So.2d 1119 (Fla. 3d DCA 1986).
[3] In Reddish, the supreme court used an operational-planning analysis to conclude that a decision to transfer a prisoner to a minimum security facility was "an inherent governmental function not arising out of an activity normally engaged in by private persons. Therefore the statutory waiver of sovereign immunity does not apply." 468 So.2d at 932. We understand this to mean that the conduct there had not crossed the threshold which would confer subject matter jurisdiction upon the court to hear the suit where the sovereign immunity has been waived (i.e., it cannot cross this threshold because it is an inherent act of governing). The supreme court has "recognized that there were areas of governmental activity where `orthodox tort liability stops and the act of governing begins'" Trianon Park, 468 So.2d at 918, citing Commercial Carrier, 371 So.2d at 1018, citing Evangelical Brethren, 67 Wash.2d at 253, 407 P.2d at 444. In addition to finding that such conduct is inherently governmental in nature and, therefore, not something that a private person could have done at common law, the court stated: "We have little difficulty concluding that with regard to the classification and assignment of prisoners within the state prison system, all four of these [Evangelical Brethren] questions can clearly and unequivocally be answered in the affirmative." Reddish v. Smith, 468 So.2d at 931. As the court itself stated in Trianon Park, 468 So.2d at 917:

[T]he city argues that law enforcement is not the kind of activity for which the state intended to waive its immunity since it is not the type of activity engaged in by private individuals. We find persuasive the arguments of the city.
We find it unnecessary to apply the four Evangelical Brethren questions to obvious inherent governmental activities such as law enforcement and legislating, among others. The use of the four categories set out in Trianon Park is sufficient for a threshold analysis of subject matter jurisdiction in sovereign immunity cases to determine if the waiver statute even applies. It is only after the proper placement of the conduct in one of the four categories of governmental functions can the Evangelical Brethren questions be adequately posed. "It is in [the] latter two categories that the Evangelical Brethren test is most appropriately utilized to determine what conduct constitutes a discretionary planning or judgmental function and what conduct is operational for which the governmental entity may be liable." Trianon Park, 468 So.2d at 921.
[4] Compare City of North Bay Village v. Braelow, 469 So.2d 869, 871 (Fla. 3d DCA 1985) (officer, after having already made decision to arrest, was engaged in ministerial duties and owed a duty that was specific to arrestee and to no other person to act with reasonable care).
[5] Subject, of course, to the exceptions in category II noted by the supreme court in Trianon Park.
[6] The supreme court had no difficulty reading the two statutes in pari materia and in giving full effect to both. Therefore, the limitations of damages contained in section 768.28(5) give way to the policy limits of insurance purchased pursuant to section 286.28 (and consequently section 30.55) where those policy limits exceed the statutory caps. This must be so in order to allow the public the benefit of the public expenditure for that insurance. Avallone, 493 So.2d at 1004.
[7] The ambiguous language is as follows: "We hold that purchase of tort liability insurance by a government entity, pursuant to section 286.28, constitutes a waiver of sovereign immunity up to the limits of insurance coverage and that this contingent waiver is independent of the general waiver in section 768.28." Avallone, 493 So.2d at 1004-5.