W. L. KINSEY, ADMINISTRATOR OF THE ESTATE OF DAVID BETHEA, DECEASED v. TOWN OF KENLY, CARL DURHAM, RALPH DAVIS, AND EULA MAE STANCIL AND KENNETH H. STANCIL.

(Filed 15 January, 1965.)

1. **Automobiles § 41e— Evidence that police car was stopped so as to block two lanes of three-lane traffic, and left standing without lights held to take issue of negligence to jury.**

    The evidence favorable to plaintiff tended to show that there were three northbound traffic lanes on the highway in question and that the driver of the car in which plaintiff was a passenger stopped in the east lane for northbound traffic in response to signal of police officers, that the police car was stopped back of it at an angle so that the front of the police car was in the eastern lane and the rear thereof extended into the center lane, that all occupants of both cars got out and were standing in the median, that the police car was standing without lights, and that a northbound car hit the rear of the police car which struck the car in which plaintiff had been riding and knocked it against plaintiff, causing the injury in suit. *Held:* The evidence was sufficient to be submitted to the jury on the issue of negligence in stopping the police car in such manner and leaving it standing without lights.

2. **Automobiles § 9—**

    The stopping of a police car on a highway solely to enable police officers to determine whether the driver of another car had a driver's license does not constitute a parking of the police car in violation of G.S. 20-161(a).

3. **Automobiles § 46—**

    Where, under the circumstances, negligence must be predicated on the concurrent acts of defendant driver in stopping the car he was driving on

the highway at an angle so as to block two traffic lanes and in leaving the car standing in this position without lights sufficient to disclose its presence, an instruction which permits the jury to answer the issue of negligence in the affirmative solely upon the jury's finding that the car was stopped at an angle in the manner indicated by plaintiff must be held for prejudicial error as being incomplete.

**4. Damages § 15—**

An instruction that counsel had introduced the mortuary tables and that the jury had the right to consider the tables but that they were not conclusive, without reading to the jury provisions of the statute, or stating its provisions in substance, must be held incomplete and erroneous. G.S. 8-46.

MOORE, J., took no part in the consideration or decision of this case.

APPEAL by defendants Town of Kenly and Carl Durham from judgment entered by *Bickett, J.,* at June 1964 Session, on verdict returned after trial before *Burgwyn, E. J.,* and a jury, at November 1963 Session of JOHNSTON.

David Bethea instituted this action June 2, 1961, to recover damages for personal injuries he sustained October 30, 1960, allegedly caused by the negligence of defendants.

Upon trial at November 1963 Session, before Burgwyn, E. J., the jury answered issues as follows: "1. Was the plaintiff injured as a result of the negligence of the defendants Carl Durham and Town of Kenly, as alleged in the Complaint? Answer: YES. 2. Was the plaintiff injured by the negligence of the defendants Kenneth H. Stancil and Eula Mae Stancil, as alleged in the Complaint? Answer: YES. 3. What damage, if any, is plaintiff entitled to recover of the defendants? Answer: $55,000.00." (Note: The action as to defendant Davis was nonsuited at the conclusion of plaintiff's evidence.) The court entered orders (1) reducing the amount of damages to $40,000.00 and (2) setting aside the verdict as to the first issue "as a matter of law." On plaintiff's appeal therefrom, this Court held said orders erroneous and remanded the case for judgment on the verdict. *Bethea v. Kenly,* 261 N.C. 730, 136 S.E. 2d 38.

On May 25, 1964, David Bethea, original plaintiff, died; and W. L. Kinsey was appointed and qualified as administrator of David Bethea's estate.

At June 1964 Session, the said administrator was substituted for his intestate as party plaintiff, and plaintiff moved that the amount of damages awarded by the jury "be reduced to $50,000.00, in order to come within Article 15A of Chapter 160 of the General Statutes." Thereupon, based on the verdict rendered at November 1963 Session,

judgment was entered by Bickett, J. "that the plaintiff have and recover of the defendants, Town of Kenly, Carl Durham, Eula Mae Stancil and Kenneth H. Stancil, the sum of Fifty Thousand ($50,000.00) Dollars," with interest and costs.

Defendants Town of Kenly and Carl Durham excepted and appealed. Their assignments of error, apart from that based on their exception to the judgment, are based on exceptions taken during and with reference to the trial at November 1963 Session.

*Spence & Mast for plaintiff appellee.*
*Smith, Leach, Anderson & Dorsett and William R. Britt for Town of Kenly and Carl Durham, defendant appellants.*

BOBBITT, J. While the administrator is now the party plaintiff, this is a *personal injury* action. Hereafter, David Bethea, the injured person — original plaintiff, will be referred to by name (Bethea) rather than as plaintiff or original plaintiff.

Bethea was injured about 12:05 a.m., on Sunday, October 30, 1960, as a result of a collision of ·three automobiles. The collision occurred on U.S. Highway #301, a main north-south route, which passes through the Town of Kenly, a municipal corporation. Within the corporate limits of Kenly, in the area where the collision occurred, three lanes for northbound traffic (toward Wilson) are separated from three lanes for southbound traffic (toward Smithfield) by a (raised) concrete traffic island or median.

With further reference to the three lanes for northbound traffic: A curbing runs along the east side of said street or highway. The east lane, next to the curbing, is 13 feet wide. The center lane is 10½ feet wide. The west lane is 10½ feet wide.

East of said curbing, between the curbing and the sidewalk, there is a grass strip 4 feet wide; and the (paved) sidewalk is 4 feet wide. East of the sidewalk there is an embankment, "a decline down into a field."

North of where plaintiff was injured, Sixth Street, which is forty feet wide from curb to curb, intersects Highway #301.

A car operated by one Everett Joyner, in which Bethea was a passenger, had stopped in the east lane (for northbound traffic) in response to a signal (siren) from a police car operated by defendant Durham. Defendant Davis was a passenger in the police car. Both Durham and Davis were police officers of Kenly. Durham stopped the police car to the rear of the Joyner car. Before stopping, the Joyner car and the police car had been proceeding north on Highway #301.

Joyner and Durham, the drivers, got out on the left side of the cars. They were standing near the left rear of the Joyner car, within the east traffic lane. Durham was checking to determine whether Joyner had a driver's license.

Bethea and Davis, the passengers, got out on the right side of the cars. They were standing on the grass strip between the curbing and the sidewalk. A car operated by defendant Kenneth H. Stancil, traveling north, crashed into the rear of the police car, causing the police car to strike the Joyner car and Bethea. Davis, immediately before the crash, had "jumped right over the embankment down the hill" and was not injured.

It is admitted: (1) Kenneth Stancil, then 20 years of age, was operating the Stancil car as agent, within the family purpose doctrine, of his mother, defendant Eula Mae Stancil, the owner; (2) Durham and Davis were acting in the course of their employment as police officers of Kenly; (3) the Town of Kenly, after due notice thereof, had failed and refused to pay Bethea's claim; and (4) the Town of Kenly had secured liability insurance and to the extent thereof ($50,000.00) had waived its governmental immunity as provided in G.S. 160-191.1 *et seq.*

The record contains original pleadings consisting of (1) complaint, (2) answer of Town of Kenly, (3) joint answer of Durham and Davis and (4) answer of Eula Mae Stancil.

The record also contains the pleadings on which the case was tried, to wit: (1) amended complaint; (2) joint answer of Town of Kenly, Durham and Davis to amended complaint; (3) answer of Eula Mae Stancil to amended complaint; and (4) answer of Kenneth H. Stancil to amended complaint.

Included in paragraph 7 of the *original* complaint, which consists largely of a description of the traffic lanes of Highway #301, is an allegation, "and . . . the parking of any motor vehicle on said highway within the corporate limits of the Town of Kenly is unlawful and is prohibited." Appellants, in their answers to the *original* complaint, admitted the allegations of paragraph 7 thereof. Bethea offered in evidence appellants' said admission of the allegations of paragraph 7 of the *original* complaint.

Paragraph 7 of the *amended* complaint contains an allegation that "no parking" signs had been erected on both sides of Highway #301 in the Town of Kenly *"pursuant to ordinances duly adopted by the Town Board of the Town of Kenly on the 2nd day of May, 1960,"* and that Durham and Davis "acted in express violation of *the provisions of said Ordinance* and the requirements of said 'no parking' signs when they parked the police vehicle . . . on U. S. Highway 301 and when they

required . . . Joyner to park his vehicle on U. S. Highway 301." (Our italics).

It is alleged in paragraph 8 of the *amended* complaint "(t)hat within the Town of Kenly the parking of any motor vehicle on said Highway 301 within the corporate limits of the Town of Kenly is unlawful and is prohibited."

In their joint answer to the *amended* complaint, appellants denied the allegations of paragraphs 7 and 8 thereof.

While there was evidence as to the presence and location of "no parking" signs along Highway #301 within the corporate limits of Kenly, no ordinance relating thereto or otherwise purporting to regulate parking on Highway #301 was offered in evidence.

The amended (as well as original) complaint contains full allegations to the effect the officers were negligent in causing Joyner to stop and "to park" on Highway #301 and in stopping and "parking" the police car thereon and in "parking" the police car at an angle and in such manner that a portion thereof was in and "fouling the center lane" for northbound traffic.

Allegations of the amended complaint with reference to lights or lack of lights on the police car are as follows: Durham and Davis, "in parking the police vehicle . . . at an angle on said highway, were negligent and careless in that any lights on the police vehicle did not reflect up and down the highway as required by law, but did reflect and shine across said highway. . . . some of the lights, if not all the lights, on the police vehicle had been turned off." Again: Durham and Davis "parked said police vehicle at an angle on the highway . . . and at the time the police vehicle was not properly and adequately equipped with lights." The only other allegation with reference to lights is that contained in paragraph 6 of the amended complaint, to wit, that the officers "caused the plaintiff (Bethea) and the operator of. the vehicle in which plaintiff (Bethea) was riding to get out of said car and come to the rear of the car in which they were riding, *in order that the officers might examine their driver's license in front of the headlights of said police automobile.*" (Our italics.)

All the evidence tends to show Joyner parked the car he was driving (a 1951 Ford owned by one Simms) wholly within the east lane, parallel and close to the curbing; and that, as testified by Joyner, "(t)he headlights and taillights were burning" on the Joyner car. Bethea testified: "Our lights were on."

Evidence favorable to Bethea tends to show that the police car, where stopped by Durham, was "catercornered," that is, headed diagonally across the east lane with the front close to the curbing and the

rear extending into the center lane. A witness for Bethea testified: "It was three or four feet into the center lane." Bethea's other evidence does not purport to fix how far it extended into the center lane. Evidence favorable to appellants tends to show the police car stopped wholly in the east lane, parallel and close to the curb, close to and directly behind the Joyner car; and that, as a result of the collision(s), the Joyner car was knocked straight forward a distance of 285 feet onto a shoulder (beyond Sixth Street) and down an embankment. (Note: North of Sixth Street Highway #301 "goes back into a dual road.")

Evidence favorable to Bethea tends to show the Stancil car approached the scene of collision in the center lane and struck the left rear of the police car. Evidence favorable to appellants tends to show the Stancil car approached the scene of collision in the east lane and struck the police car directly in the rear thereof.

Evidence favorable to Bethea tends to show there were no lights of any kind on the police car and that Durham was undertaking to check Joyner's driver's license by means of a flashlight. Evidence favorable to appellants tends to show the front and rear lights on the police car were burning; that a rotating or revolving red light, mounted on the dash of the police car, was burning; that this red light was observable and was observed by persons at an intersection some two and one-half or three and one-half blocks south of the collision; that Durham, by waving his flashlight, undertook to attract Stancil's attention and cause him to bear to his left and use the ample space available for his use; and that the area was illuminated by street lights.

It is unnecessary to review evidence tending to support Bethea's allegations to the effect Kenneth H. Stancil operated his mother's car "at a high and dangerous rate of speed," and "carelessly and recklessly and in wanton disregard of the rights and safety of others," and without keeping "a careful and proper lookout," and "violently collided with" the police car, and "knocked the police vehicle with great force into and upon" the Joyner car. Suffice to say, there was ample evidence to sustain the finding that Kenneth H. Stancil was guilty of actionable negligence. Incidentally, it is noted that Kenneth H. Stancil did not testify.

Appellants contend their motion(s) for judgment of nonsuit should have been granted. However, the evidence most favorable to Bethea tends to show the Stancil car was traveling in the center lane for northbound traffic; that the police car was stopped and standing in such manner that a substantial portion of the rear thereof was in said center lane; that there were no burning lights on the police car; and that the presence and position of said cars were not disclosed by street

lights. This evidence, independent of whether the Joyner and police cars were "parked" in violation of an ordinance of the Town of Kenly or in violation of G.S. 20-161(a), was sufficient to require submission of the issue as to appellants' actionable negligence. Hence, appellants' motion(s) for judgment of nonsuit were properly overruled.

In an early portion of the charge, the court instructed the jury as follows: "However, I charge you if you find from the testimony and by its greater weight, the burden being on the plaintiff to so satisfy you, that the defendant Durham did park his automobile or police automobile upon the public highway at night with its rear end extending into the middle or partly into the middle lane of Highway 301 *without its lights burning;* and that such act on his part was negligence and that such negligence was the proximate cause or one of the proximate causes combining and cooperating with the negligence of the defendant Kenneth H. Stancil, if you find that Kenneth H. Stancil was negligent then I charge you it would be your duty to answer that first issue YES." (Out italics.) It is noted that the court did not instruct the jury to answer the first issue, "No," if Bethea failed to satisfy the jury from the evidence and by its greater weight of all matters set forth in the quoted instruction.

Much later in the charge the court, with reference to the first issue, gave the following final instruction: "If you are satisfied from the testimony and by its greater weight, the burden being upon the plaintiff to so satisfy you that there was negligence on the part of Mr. Durham in the way and manner that he parked the Town's car on the night in question and that such negligence was one of the proximate causes of the injury complained of and was not insulated by the negligence of the other defendant, you would answer the first issue YES. If you fail to be so satisfied, it would be your duty to answer it NO."

Under said final instruction, it seems clear the jury was permitted to find appellants guilty of actionable negligence solely on the basis of "the way and manner" in which Durham "parked the Town's car on the night in question."

The action of the officers in causing Joyner to stop and the stopping of the police car, solely to enable the officers to determine whether Joyner had a driver's license, did not constitute *a parking* of an automobile or automobiles in violation of G.S. 20-161(a). *Skinner v. Evans,* 243 N.C. 760, 765, 92 S.E. 2d 209, and cases cited; *Meece v. Dickson,* 252 N.C. 300, 304, 113 S.E. 2d 578, and cases cited. A failure to display lights on a vehicle "parked or stopped upon a highway" in violation of G.S. 20-134 is a different matter. *Melton v. Crotts,* 257 N.C. 121, 125, 125 S.E. 2d 396. Nor did such action constitute *a parking* of an

automobile or automobiles in violation of an ordinance, if any, of Kenly relating to parking on Highway #301. As Stancil approached the scene of collision, there was available for his use the entire west lane for northbound traffic and (according to Bethea's evidence) all except three or four feet of the center lane. there was no other traffic that might have affected Stancil's operation.

Under the circumstances, we are of opinion, and so decide, that to establish the actionable negligence of appellants it was incumbent upon Bethea to satisfy the jury by the greater weight of the evidence not only that the police car was stopped in the way and manner Bethea contended but that it was standing without lights sufficient to disclose its presence and position. Hence, the said final instruction was incomplete, erroneous and prejudicial.

Bethea sustained serious injuries. His right leg was amputated. Since he suffered permanent disability, his life expectancy became a matter of major significance. Bearing thereon, the court instructed the jury as follows: "He (Bethea) contends . . . that at the time of the accident he was a man . . . 46 years old, and his counsel have introduced the mortuary tables of the State which (indicates he had a life expectancy of some 26 years). You have a right to consider that; that is not conclusive; you are not bound by that." Appellants excepted to the portion within parentheses.

The court did not read to the jury the provisions of G.S. 8-46 or state in substance the provisions thereof. No instruction was given as to factors to be considered in determining life expectancy nor was the jury advised of their duty to make such determination. For reasons stated in *Harris v. Greyhound Corporation*, 243 N.C. 346, 354, 90 S.E. 2d 710, the instruction relating to life expectancy is incomplete and erroneous. See *Starnes v. Tyson*, 226 N.C. 395, 397, 38 S.E. 2d 211, and cases cited.

For the reasons stated, appellants are awarded a new trial.

New trial.

MOORE, J., took no part in the consideration or decision of this case.