543 So.2d 732 (1989)
Glenn KAISNER, et Ux., Petitioners,
v.
Gary Joseph KOLB, et al., Respondents.
No. 71121.
Supreme Court of Florida.
March 30, 1989.
Rehearing Denied June 22, 1989.
*733 Daniel C. Kasaris of Yanchuck, Thompson, Young, Berman & Latour, P.A., St. Petersburg, for petitioners.
Rex E. Delcamp and Jeffrey R. Fuller of Williams, Brasfield, Wertz, Fuller & Lamb, P.A., St. Petersburg, for respondents.
Robert King High, Jr. and Robert M. Ervin, Jr. of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, amicus curiae for the Academy of Florida Trial Lawyers.
George A. Vaka of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, amicus curiae for Florida Sheriff's Self-Ins. Fund.
BARKETT, Justice.
We have for review Kaisner v. Kolb, 509 So.2d 1213 (Fla. 2d DCA 1987), based on express and direct conflict with Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We quash the decision below and remand.
On June 29, 1979, Glen Kaisner, his wife and five children were traveling in a pickup truck on a St. Petersburg street when they were stopped for an expired inspection sticker. Two officers in a police cruiser, Jones and Kolb, pulled Kaisner into the curb lane and parked their vehicle about one vehicle length behind. At this time, Mr. Kaisner left the pickup truck and walked between the two vehicles. One of the officers approached Mr. Kaisner, told Mr. Kaisner not to come any closer, and then returned to the cruiser. After some minutes passed, Deputy Jones left his vehicle. Kaisner simultaneously began moving toward the officer. At this moment, the police cruiser unexpectedly was hit from behind by another vehicle, and was propelled forward into the pickup truck. Both Kaisner and Deputy Jones were struck.
The Kaisners brought an action against the two deputies, the Pinellas County Sheriff's Department and American Druggist Insurance Co., insurer of the police cruiser. The second amended complaint alleges that the deputies breached a duty of care by failing to use proper police procedure in the stop. An affidavit from an expert in police procedure supported this contention and stated that the deputies' negligence proximately caused the Kaisners' losses. Nevertheless, the trial court granted summary judgment in favor of all defendants.
The Second District affirmed. 509 So.2d at 1220.[1] In its essential holdings, the district court concluded that (1) the officers had engaged in an act peculiarly governmental in nature that thus was discretionary and immune from suit; (2) notwithstanding the immunity, no duty of care existed under section 314A of the Restatement (Second) of Torts (1979); and (3) there was no waiver of sovereign immunity up to the limits of insurance coverage. This review ensued.
The state of Florida has waived sovereign immunity for any act for which an individual in similar circumstances could be held liable. § 768.28, Fla. Stat. (Supp. 1980). On the face of the statute, this waiver does not attempt to distinguish between particular kinds of governmental acts.
Realizing, however, that the judiciary is ill-equipped to interfere in the fundamental processes of the executive and legislative branches, this Court consistently has held that there remains a sphere of governmental activity immune from suit. In reviewing our case law on this point, we recognize that this governmental immunity has been described in many ways.
For instance, we sometimes have attempted to resolve issues involving governmental immunity by reference to the tort law concept of duty of care. As is self-evident, the waiver of sovereign immunity did not of itself create any new duties of care. Trianon Park Condominium Ass'n v. City of Hialeah, 468 So.2d 912, 917 (Fla. 1985). Starting from this premise, we have based some of our holdings on the principle *734 that there can be no governmental liability unless a common law or statutory duty of care existed that would have been applicable to an individual under similar circumstances. Id. As the California Supreme Court noted, "`[c]onceptually, the question of the applicability of ... immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity.'" Williams v. State, 34 Cal.3d 18, 22, 192 Cal. Rptr. 233, 235, 664 P.2d 137, 139 (1983) (quoting Davidson v. City of Westminister, 32 Cal.3d 197, 185 Cal. Rptr. 252, 649 P.2d 894 (1982)).
Trianon essentially rests on this principle and thus stands for the proposition that a city has no duty to enforce a building code for the benefit of particular individuals. In such circumstances, there can be no liability. Trianon was not intended to, and did not affect our prior pronouncements on the question of governmental immunity. It merely addressed, in that particular factual context, the parallel question of the duty of care. While a duty certainly must exist for there to be liability, the question of governmental immunity does not itself depend upon this determination. That is, a court must find no liability as a matter of law if either (a) no duty of care existed, or (b) the doctrine of governmental immunity bars the claim. Trianon disposed of the issue by reference to the first of these.
In this case, we find that petitioner was owed a duty of care by the police officers when he was directed to stop and thus was deprived of his normal opportunity for protection. Under our case law, our courts have found liability or entertained suits after law enforcement officers took persons into custody, otherwise detained them, deprived them of liberty or placed them in danger. E.g., Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957) (liability when inmate died of smoke inhalation in negligently attended jail); Department of Highway Safety and Motor Vehicles v. Kropff, 491 So.2d 1252 (Fla. 3d DCA 1986) (liability for injury caused by officer's negligence during roadside stop); Walston v. Florida Highway Patrol, 429 So.2d 1322 (Fla. 5th DCA 1983) (liability for injury caused by officer's negligence during roadside stop); White v. Palm Beach County, 404 So.2d 123 (Fla. 4th DCA 1981) (liability for violence and sexual abuse suffered by inmates in jail); Henderson v. City of St. Petersburg, 247 So.2d 23 (Fla. 2d DCA) (liability for injury to police informant after police knew he was in danger for cooperating with authorities), cert. denied, 250 So.2d 643 (Fla. 1971). So long as petitioner was placed in some sort of "custody" or detention, he is owed a common law duty of care.
The term "custody" is defined as the detainer of a man's person by virtue of lawful process or authority.
The term is very elastic and may mean actual imprisonment or physical detention or mere power, legal or physical, of imprisoning or of taking manual possession.
Black's Law Dictionary 347 (5th ed. 1979) (emphasis added). We thus conclude that "custody" need not consist of the formal act of an arrest, but can include any detention.
It is apparent that the district court took too restrictive a view of the term "custody" in this instance. Petitioner and his family unquestionably were restrained of their liberty when they were ordered to the roadside. They were not free to leave the place where the officers had ordered them to stop. Petitioner effectively had lost his ability to protect himself and his family from the hazard at hand, which consisted of onrushing traffic. The only way petitioner could have escaped this threat would have been by disobeying the officers' instructions that he remain in the general area where they had stopped him, thus subjecting himself to immediate arrest and criminal charges. Under these circumstances, petitioner clearly was sufficiently restrained of liberty to be in the "custody" or control of the police. Thus, the officers owed him and his family a duty of care arising under the common law of Florida.
*735 This conclusion is supported by decisions of the district courts addressing factual issues similar to those presented here. Kropff; Walston. Accord Wood v. Ostrander, 851 F.2d 1212 (9th Cir.1988); White v. Rochford, 592 F.2d 381 (7th Cir.1979). In Walston, a case whose facts are indistinguishable from the present action, the Fifth District reversed a directed verdict in favor of the state. Although not addressing the immunity issue, the Walston court concluded that a question of foreseeability existed when an officer detained a person at roadside despite evidence of the danger posed by onrushing traffic. 429 So.2d at 1324. As in the present case, the detainee in Walston was injured when a third vehicle struck a vehicle parked on the roadside as a result of the police's actions. Id.
In Kropff, the Third District confronted an injury caused by actions taken by an officer while investigating an accident along a busy roadway. One of the persons involved in the accident was assisting in the roadside investigation and was struck when she followed the officer into the roadway. Specifically addressing the question of whether Trianon barred recovery, the Kropff court found that the trooper's actions in securing the scene of an accident were operational in nature and thus not immune. Kropff, 491 So.2d at 1255 n. 2. The court then agreed that a duty of care existed that would support liability. Id. at 1255.
This conclusion also is supported by the law of other jurisdictions, whose courts generally agree that liability may exist because of injuries caused when a vehicle driven by a third party collides with persons or vehicles stopped on the roadside by the police.
For instance, our sister court in North Carolina has determined that liability can exist where a police car, after stopping another vehicle, was left partially jutting into the roadway with no lights burning to warn approaching traffic. Kinsey v. Town of Kenly, 263 N.C. 376, 380, 139 S.E.2d 686, 688-90 (1965). In Kinsey, the injury also occurred when a vehicle driven by a third party crashed into the police car, propelling it forward into persons stopped on the roadside by police. Id.
The appellate courts of California have addressed the question most clearly in two cases, the first of which sustained a jury verdict for the plaintiff and the second of which sustained a verdict for the defendant. In Reed v. City of San Diego, 77 Cal. App.2d 860, 868, 177 P.2d 21 (1947), the California district court held that liability was for the jury to decide where police had stopped a vehicle along the roadside but, as in Kinsey, had left the police vehicle remaining partly on the highway. Again, the police vehicle had been struck by oncoming traffic, propelling it forward into the persons who had been stopped by the police. Id.
However, in Whitton v. State, 98 Cal. App.3d 235, 239-40, 159 Cal. Rptr. 405, 407-08 (1979), the California appellate court sustained a jury verdict in favor of the state based on a similar rear-end collision that propelled a police car forward into persons stopped on the roadside by police. It is significant the Whitton court assumed that a proper jury question was presented. See id. In its discussion, Whitton found that the question to be resolved by the jury was one of foreseeability. In the specific circumstances of that case, the California court found that an unexpected rear-end collision by a vehicle driven by a drunken driver was not so clearly foreseeable that the jury verdict in favor of the state should be reversed, especially where there was no evidence the officers had acted negligently. Id.
We agree with this general analysis. There is a strong public policy in this state that, where reasonable men may differ, the question of foreseeability in negligence cases should be resolved by a jury. Vining v. Avis Rent-A-Car Systems, Inc., 354 So.2d 54, 56 (Fla. 1977). Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses. See Stevens v. Jefferson, *736 436 So.2d 33, 35 (Fla. 1983) (citing Crislip v. Holland, 401 So.2d 1115, 1117 (Fla. 4th DCA), review denied sub nom. City of Fort Pierce v. Crislip, 411 So.2d 380 (Fla. 1981)).
We see no reason why the same analysis should not obtain in a case in which the zone of risk is created by the police. The expert's affidavit in this case created an issue of fact as to whether the police violated this duty of care and were therefore guilty of negligence. While it is true that petitioner in this instance may have aggravated his injuries by his own conduct, we do not believe this should vitiate his claim entirely. Rather, this concern should be left to the jury to consider under the doctrine of comparative negligence, which rests on the principle that liability should be apportioned according to fault. See Hoffman v. Jones, 280 So.2d 431 (Fla. 1973).
We thus find that a duty of care existed that would support a lawsuit in the absence of any viable claim of governmental immunity, a question to which we now turn.
In general, the Court consistently has held that liability may exist when the act of the government or its agent is not discretionary, but operational in nature. E.g., Avallone v. Board of County Comm'rs, 493 So.2d 1002, 1005 (Fla. 1986); Commercial Carrier v. Indian River County, 371 So.2d 1010 (Fla. 1979). The question here is whether the police officers' acts fell in one or the other category.
It is evident, however, that the terms "discretionary" and "operational" are susceptible of broad definitions. Indeed, every act involves a degree of discretion, and every exercise of discretion involves a physical operation or act. Thus, to provide sharper definition to these terms, we have resorted to the law of other jurisdictions.
California, for instance, has held that the very process of ascertaining whether an official determination rises to the level of insulation from judicial review requires sensitivity to the considerations that enter into it and an appreciation of the limitations on the court's ability to reexamine it... . It requires us to find and isolate those areas of quasi-legislative policy-making which are sufficiently sensitive to justify a blanket rule that courts will not entertain a tort action alleging that careless conduct contributed to the governmental decision.
Johnson v. State, 69 Cal.2d 782, 794, 73 Cal. Rptr. 240, 248-49, 447 P.2d 352, 360-61 (1968) (footnote omitted) (adopted in Commercial Carrier, 371 So.2d at 1021-22).
In Evangelical United Brethren Church v. State, 67 Wash.2d 246, 255, 407 P.2d 440, 445 (1965) (adopted in Commercial Carrier, 371 So.2d at 1019), our sister court in Washington developed the following test for differentiating discretionary from operational functions:
(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision? If these preliminary questions can be clearly and unequivocally answered in the affirmative, then the challenged act, omission, or decision can, with a reasonable degree of assurance, be classified as a discretionary governmental process and nontortious, regardless of its unwisdom.
We ourselves repeatedly have recognized that the discretionary function exception is grounded in the doctrine of separation of powers. Trianon, 468 So.2d at 918; Commercial Carrier, 371 So.2d at 1022. That is, it would be an improper infringement of separation of powers for the judiciary, by way of tort law, to intervene in fundamental decisionmaking of the executive and legislative branches of government, including *737 the agencies and municipal corporations they have created. See art. II, § 3, Fla. Const.
We reaffirm this principle and are persuaded that governmental immunity derives entirely from the doctrine of separation of powers, not from a duty of care or from any statutory basis. See art. II, § 3, Fla. Const. Accordingly, the term "discretionary" as used in this context means that the governmental act in question involved an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning. See Department of Health and Rehabilitative Services v. Yamuni, 529 So.2d 258, 260 (Fla. 1988). An "operational" function, on the other hand, is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented. We believe this basic definition can be illuminated by the tests and definitions employed by the courts of California and Washington, quoted above.
Turning now to the facts of this case, we begin with the distinction developed by the California court in Johnson and adopted in Commercial Carrier. The question thus is whether the act of the officers in this case involved "quasi-legislative policy-making ... sufficiently sensitive to justify a blanket rule that courts will not entertain a tort action alleging that careless conduct contributed to the governmental decision." 73 Cal. Rptr. at 248-49, 447 P.2d at 360-61. We find that it does not. The precise manner in which a motorist is ordered to the side of the road is neither quasi-legislative nor sensitive.
We also look to the four-part test employed by our sister court in Washington and adopted in Commercial Carrier. First, did the act of the officers in this instance involve a basic governmental policy, program or objective? In this instance, it did not. The decision as to where motorists will be ordered to the side of the road at best is a secondary concern, for the reasons we previously have elaborated.
Second, is the act essential to the realization of basic policy? In this instance, it was not. Safer places or methods of ordering motorists to the roadside may exist that would both protect the motorists and meet the government's objectives.
Third, did the act require basic policy evaluation or expertise? In this instance, it did not. For the reasons stated earlier, the act in this instance at best involved secondary judgment. Were we to establish a rule preventing officers from ordering motorists to the roadside, then we improperly would be entangling ourselves in matters involving basic policy evaluation or planning. Such is not the case at hand. This lawsuit merely asks the courts to consider the way in which this basic policy is implemented, not its fundamental wisdom.[2]
Fourth, was the act lawfully authorized? In this instance, it clearly was. Law enforcement officers have the authority to pull motorists to the roadside for traffic infractions.
Under the analysis of Commercial Carrier, the tests adopted from our sister courts in Washington and California are very persuasive and lend support to the analysis employed under Florida law. 371 So.2d at 1019. We noted in Commercial Carrier that, if one or more of the questions asked by the Washington court could be answered in the negative, further inquiry might be required by the court. Id. We thus turn to the distinction between "operational" and "discretionary" functions.
While the act in question in this case certainly involved a degree of discretion, we cannot say that it was the type of discretion that needs to be insulated from suit. Intervention of the courts in this case *738 will not entangle them in fundamental questions of public policy or planning. It merely will require the courts to determine if the officers should have acted in a manner more consistent with the safety of the individuals involved.[3]
Obviously, there may be many ways of ordering motorists to the roadside, some safer than others, most requiring neither greater cost nor a change in fundamental governmental policies. The issue here involved neither the policies themselves nor the decision to order petitioners to the roadside, which we would be powerless to alter by way of tort law. Instead, the problem was the way these decisions were implemented, which our courts indeed may review in an action for negligence. We thus conclude that the presumption created by resort to the California and Washington tests is borne out by the distinction between "operational" and "discretionary" functions recognized under the law of Florida. The act in this instance was operational, not discretionary.
Finally, we disagree with the district court's holding that the enactment of section 286.28, Florida Statutes (1985), did not waive governmental immunity up to the limits of insurance coverage. Both the plain language of the statute and our holding in Avallone require a contrary conclusion. 493 So.2d at 1004-05. This contingent waiver operates independently of the general waiver of sovereign immunity and would be sufficient to allow recovery up to the limits of coverage in this instance provided the elements of negligence are properly found to exist.
We note, however, that the legislature in chapter 87-134, Laws of Florida, "retroactively" has modified section 768.28 and "retroactively" has repealed section 286.28 as applied to any cause of action in which a verdict or judgment had not been obtained by June 30, 1987.[4] The present case falls within that category.
Chapter 87-134 effectively provides that the purchase of liability insurance does not waive the limit on damages, which is $100,000 or $200,000, depending upon the facts of the case. We note that chapter 87-134 in its bill title explicitly characterizes itself as a clarification of original legislative intent as to section 768.28. See ch. 87-134, Laws of Fla. Nevertheless, there is nothing in chapter 87-134 purporting to clarify the intent underlying section 286.28, upon which Avallone rested and upon which petitioners rely. Indeed, it would be absurd to construe the repeal of a statute, even where the legislature purports to make the repealer partially retroactive, as a "clarification" of original legislative intent. Subsequent legislatures, in the guise of "clarification," cannot nullify retroactively what a prior legislature clearly intended. Art. I, § 10, Fla. Const.
Accordingly, we must consider whether petitioners had a vested interest under section 286.28 that would be impaired by retroactive application of chapter 87-134 to prior injuries. We believe petitioner did have a vested right to sue respondents under section 286.28 as it was interpreted by this Court in Avallone. This holding is compelled by our decision in Rupp v. Bryant, 417 So.2d 658 (Fla. 1982). In Rupp, we held that the legislature could not retroactively cloak certain public employees with absolute immunity, effectively preventing a plaintiff from suing them for a prior injury. Id. at 665-66. We reached this result in Rupp despite the fact that no jury award *739 had yet been returned, 417 So.2d at 666, and despite the fact that the retroactive law could be interpreted as a clarification of original legislative intent. See id. at 671 (Boyd, J., dissenting). We see no reason why a different result should obtain here merely because the retroactive law limits the amount of recovery and does not completely abolish the cause of action. A vested right is not any less impaired in the eyes of the law merely because the impairment is partial.
We find that the district court improperly found that the second amended complaint posed no question for the jury. We quash the decision below and remand for further proceedings consistent with this opinion.
It is so ordered.
EHRLICH, C.J., and SHAW, GRIMES and KOGAN, JJ., concur.
McDONALD, J., dissents with an opinion.
OVERTON, J., dissents.
McDONALD, Justice, dissenting.
Unlike the majority, I fail to find an issue of fact adequate to support a claim for damages against the defendants in this case. First, I fail to see where a duty existed to the plaintiffs from the defendants requiring the defendants to protect the plaintiff from the negligent act of the driver of the car which collided with the police car. Secondly, I fail to find an act of negligence of the defendants which was the proximate cause of injury to the plaintiff.
After being signalled to stop by the deputies, Kaisner stopped in the far right-hand lane of this curbed road, and the deputies stopped directly behind him, with their car completely in that single lane. They also kept their car's emergency lights on during the entire time. It was broad daylight on a clear summer day. There was no obstruction to prevent other motorists from seeing the stopped police vehicle. The driver who struck the police car was not looking ahead, but for an object inside her car when she ran into the stopped vehicle.
After stopping, the plaintiff alighted from his car and walked to the position where he was when he was struck. He was not directed to do so by the defendants. There is no indication that the plaintiff was, or should have been, relying upon the arresting officer to protect him from the negligent driver at this time. He was not incapacitated, had full control of his faculties and, though stopped, was not under arrest or in the custody of the police.
This accident differs from others which have been allowed to proceed. The accident in Walston v. Florida Highway Patrol, 429 So.2d 1322 (Fla. 5th DCA 1983), occurred at night, and the stopped car's two occupants were obviously drunk. The arrested driver was led between the two cars even though the trooper had been taught not to allow people to stand between the cars during a stop and that he had questioned, to himself, the safety of their doing so. The facts in the instant case are a far cry from the facts of Walston.[*]
The same is true of Department of Highway Safety & Motor Vehicles v. Kropff, 491 So.2d 1252 (Fla. 3d DCA 1986). In Kropff a trooper stopped his patrol car on the opposite side of a multi-lane road to investigate an accident at 11:00 at night. He failed to warn oncoming traffic of a vehicle disabled in the accident, failed to move his car to secure the scene from oncoming traffic, failed to request backup, and after taking Kropff back to her disabled car questioned her and the witnesses in the middle of the street, where a passing truck struck and injured Kropff. Kropff did not go into the street by herself, but did so only when accompanying the trooper.
A jury question existed in Walston and Kropff. The same, however, is simply not *740 true in the instant case because the facts demonstrate unquestionably that these deputies used reasonable care and had assumed no special duty to the plaintiff.
A problem with this, and the other cited cases, is foreseeability. In Vining v. Avis Rent-A-Car Systems, Inc., 354 So.2d 54 (Fla. 1977), this Court considered whether the owners of a stolen rental car could be "liable for the conduct of a thief who steals the car and subsequently injures someone while negligently operating the stolen vehicle." Id. at 55. Based on the facts presented in Vining, the Court stated: "Since reasonable men might differ, the ultimate determination of foreseeability rests with the jury." Id. at 56.
The majority cites Vining in stating that foreseeability should be resolved by a jury and concludes that the same analysis should be used when the police create a zone of risk. Slip. op. at 6. In its analysis the majority cites two California cases, Reed v. City of San Diego, 77 Cal. App.2d 860, 177 P.2d 21 (1947), and Whitton v. State, 98 Cal. App.3d 235, 159 Cal. Rptr. 405 (1979), which, I believe, do not support the majority's leaving foreseeability to the jury in this case. In Reed the court affirmed judgments against the city when two police officers pulled a driver over late at night, parked their car at an angle with the rear half on the road, dimmed the headlights, and turned off the car's red light. This reckless disregard of possible consequences prompted the court to find that the circumstances presented a question of fact as to whether the officers' arbitrary exercise of the privilege of drivers of emergency vehicles exempted them from statutory liability. The applicability of Reed is questionable because the deputies used reasonable care in this case, and, therefore, the question of foreseeability does not arise.
Whitton, on the other hand, supports the idea that foreseeability should not be an issue in this case. In Whitton the police stopped a motorist who was subsequently injured when another vehicle hit the police car which then struck Whitton. The case went to the jury on the question of whether the officers acted in a reasonable manner, based on the circumstances. The appellate court stated that "the jury's verdict, finding defendants not negligent, indicates that the jury accepted the substantial evidence that the officers did not place or compel plaintiff to remain between the two cars and that she was not at such position at the moment of the impact." 98 Cal. App.3d at 242, 159 Cal. Rptr. at 409.
The court went on to discuss the heart of Whitton's claim, i.e., that the traffic stop imposed an absolute liability on the officers. The court refused to accept this idea and stated:
The relationship of CHP officer and stopped motorist does not impose on the officer a higher duty, such as guardian or guarantor, against a hazard no more known to occur or foreseeable to the officer than to any other user of the highway. Absent some evidence of the officer's actual knowledge of some history at that particular place and at that particular time an accident is likely to occur, or that a drunken driver is likely to strike the vehicles, it is unjust to charge the officer with special foreseeability of such events. That hazard is as known to users of the freeways as it is to the officers and cannot be eliminated. Appellant presented no evidence and has demonstrated no reason for such a rule of almost absolute liability.
There was nothing produced in evidence and nothing has been explained here which demonstrates why the fortuitous event of a drunken driver hitting the parked vehicles should make the officer automatically liable. Irrespective of this shortcoming in her case, appellant continues to argue that the drunken driver's collision was foreseeable. This is not the foreseeability upon which the law of negligence is based. The conduct of the respondents was not the cause-in-fact or the substantial factor in law in bring[ing] about the harm to the plaintiff. When the law says a person substantially contributes to the injury, the law is dealing with responsibility based on reasonable expectations and a common-sense approach to fault not physics.
*741 Id. at 242-43, 159 Cal. Rptr. at 409. The court went on to state that
when an officer stops a motorist on the shoulder of the highway and allows the motorist to remain in or near the area, such officer is not negligent simply because there is a possibility that a drunken driver might collide with such vehicles parked on the shoulder and off the traveled lane. All possibilities of risk even if "foreseeable" in the abstract as possibilities cannot be eliminated. There was no evidence in the case at bench that any of the risks to plaintiff, and which are common to all users of the public area, was increased by any negligent conduct on the part of respondent.
Id. at 244, 159 Cal. Rptr. at 210.
Every case cited by the majority is an instance where the police created an unreasonable risk because of the nature of the roadway, time of day, and the like. None of these were in broad daylight on an unobstructed road as we have here.
I believe it would be accurate to state in this case that a law enforcement officer's goal to protect the citizens is a goal for all the public. Such goals, however, do not create duties in tort. A law enforcement officer's duty to an individual citizen is an assumed duty which exists when the law enforcement officer takes action that justifies a citizen to reasonably rely upon the officer for protection.
There was no reasonable reliance by the plaintiff in this case. When he selected the specific location to stop, decided where to go, and where to stand, he had no legitimate expectation that the police would protect him from a motor vehicle accident arising out of the negligence of a third party. Kaisner has a valid claim against the driver causing the accident. It should stop there.
NOTES
[1] In a related action, the trial court issued a declaratory judgment that, if governmental immunity was not a bar, plaintiffs could claim against both the motor vehicle policy and a police professional liability policy. The Second District affirmed. Kolb v. Kaisner, 437 So.2d 681 (Fla. 2d DCA 1983).
[2] We implicitly recognized this distinction in Trianon when we noted that some activities of police officers in carrying out their duties, such as the way motor vehicles or firearms are used, may be actionable. Trianon Park Condominium Ass'n v. City of Hialeah, 468 So.2d 912, 920 (Fla. 1985). We do not consider these two examples to be an exhaustive list of all possible actionable activities involving law enforcement officers.
[3] We emphasize, however, that the facts of this case present no countervailing interests, such as the safety of others. The result we reach today would not necessarily be the same had the officers in this instance been confronted with an emergency requiring swift action to prevent harm to others, albeit at the risk of harm to petitioners. The way in which government agents respond to a serious emergency is entitled to great deference, and may in fact reach a level of such urgency as to be considered discretionary and not operational.
[4] Chapter 87-134, section 5, Laws of Florida, provides:

This act shall take effect upon becoming a law and shall apply to all causes of action then pending or thereafter filed, but shall not apply to any cause of action to which a final judgment has been rendered or in which the jury has returned a verdict unless such judgment or verdict has been or shall be reversed.
[*] I would like to add that Judge Cowart, in his concurring/dissenting opinion in Walston, properly analyzed the law relative to those facts. The driver had been placed under arrest and the principle enunciated in section 314A applied to the arrested driver, but not to the unarrested passenger.