**Ebony WILSON as the natural daughter and Personal Representative of the Estate of Sandra Wilson, deceased, Plaintiff,**

v.

**MIAMI–DADE COUNTY, Defendant.**

**No. 04–23250–CIV–MOORE.**

United States District Court,
S.D. Florida.

May 3, 2005.

*State Univ. v. Sondel,* 685 So.2d 923, 925 (Fla. 1st DCA 1996).

Paul A. McKenna, Esq., McKenna & Obront, Miami, FL, for Plaintiff.

Craig Leen, Esq., Assistant County Attorney, Miami, FL, for Defendant.

### ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendant's Motion to Dismiss Count III of Plaintiff's Complaint (DE # 17).

UPON CONSIDERATION of the motion and responses, and pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

### BACKGROUND

This case arises out of the murder of Sandra Wilson ("Wilson"). Wilson alleges three bases for liability against Defendant Miami–Dade County (the "MDPD"): (1) the MDPD violated Wilson's rights under the Fifth and Fourteenth Amendments of the United States Constitution; (2) the MDPD's negligent retention and supervision of Officer Leon Storr ("Storr") resulted in the murder of Wilson; and (3) the MDPD's failure to adopt or implement a sufficiently effective program of psychological screening and monitoring of police officers resulted in Wilson's death.

The facts of the Complaint are as follows: Sandra Wilson and Officer Leon Storr, both members of the Miami–Dade Police Department, were engaged in a 15-year intimate relationship that ended in early 2003. Am. Compl. at ¶ 6, 9. Upon termination of their relationship Storr became emotionally upset and began stalking Wilson. Am. Compl. at ¶ 10. Plaintiff alleges that Storr's emotional problems were known to his direct supervisors in the MDPD, Lieutenant Tony Perez ("Perez") and Sergeant Mario Sanchez ("Sanchez"). Am. Compl. at ¶ 11. Sanchez and Perez visited Storr at his residence and suggested that Storr see the MDPD psychologist.

Id. When Storr advised his supervisors that he could not get an appointment Sanchez suggested that he request an emergency appointment. Id. Storr used his firearm to stalk Wilson by calling her at work and firing warning shots into the phone. Am. Compl. at ¶ 13. Storr also showed up intoxicated at a party attended by other members of the MDPD and displayed his firearm. Am. Compl. at ¶ 14. Storr told other county employees that he was distraught over his breakup with Wilson and "couldn't take it anymore," that his "life was not worth anything," and that he had "nothing to live for." Am. Compl. at ¶ 15. During this period, Storr was permitted to retain his firearm and to remain on active police officer status. Am. Compl. at ¶ 12.

Wilson requested a meeting with the Chief of the Administration and Technology Division of the MDPD, Chief J.D. Patterson ("Patterson") where she complained of Storr's harassment. Am. Compl. at ¶ 16. Wilson asked and Patterson agreed to intervene on her behalf. Am. Compl. at ¶ 16. Patterson met with Storr, whereupon Storr advised Patterson that Wilson was "still interested" in him and he thought the relationship could be "rekindled." Am. Compl. at ¶ 17. Plaintiff further alleges that according to his MDPD personnel profile Storr was willing to distort facts, overly deny personal fault, was prone to accumulated tension and was capable of explosive expressions of hostility under accumulated stress. Am. Compl. at ¶ 19. Storr's attempt to convince Patterson that Wilson was still interested in him was a red flag that Storr needed psychological help, suspension or reassignment within the department as well as confiscation of his firearm. Am. Compl. at ¶ 20.

Plaintiff alleges that notwithstanding the MDPD's knowledge that Storr had severe emotional problems, missed work and

court, avoided psychological treatment and harassed Wilson over their failed relationship, the MDPD took no steps to protect Wilson or prevent Storr from harming Wilson. Am. Compl. at ¶ 11, 18, 20. The MDPD was deliberately indifferent to the need to train employees to be sensitive to complaints of harassment of fellow employees and to have specific policies, practices, and early warning systems in place to protect employees from harassment and stalking by police officers. Am. Compl. at ¶ 21

On Sunday June 29, 2003, approximately three weeks after Storr's conversation with Patterson, Storr drove to Wilson's home in North Miami Beach, Florida, shot her to death and committed suicide. Am. Compl. at ¶ 22.

## DISCUSSION

Defendant argues that because Count III questions whether the County should have adopted a particular policy or program, the claim expressed in Count III is barred by the Florida state law doctrine of sovereign immunity and should be dismissed.

## A. Analysis

■ The question of immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity. *Kaisner v. Kolb,* 543 So.2d 732, 734 (Fla.1989) (citations omitted). Assuming a duty is owed, we must then determine whether sovereign immunity bars an action for an alleged breach of that duty. *Kaisner,* 543 So.2d at 736.

In *McCain v. Florida Power Corp.,* 593 So.2d 500 (Fla.1992), the court explained that the duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader "zone of risk" that poses a general threat of harm to others. *See Kaisner,* 543 So.2d at 735 (citing *Stevens v. Jefferson,* 436 So.2d 33, 35 (Fla.1983)). Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a defendant's duty to either lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses. *Kaisner,* 543 So.2d at 735 (citations omitted).

■ At this stage of the litigation, this Court must accept Plaintiff's allegations as true. This Court must construe the Complaint in the light most favorable to Plaintiff, and cannot grant the Motion to Dismiss unless it appears beyond doubt that Plaintiff can prove no set of facts in support of its claim which would entitle it to relief. This Court concludes that Plaintiff has sufficiently alleged that Defendant's conduct placed Plaintiff in a "zone of risk" and thus owed Plaintiff a specific duty to either lessen the risk or see that sufficient precautions were taken to protect Plaintiff from the harm that the risk posed.

We turn then to the issue of sovereign immunity. Defendant argues that Plaintiff is challenging the government's decision not to adopt programs and policies of psychological screening and monitoring of police officers to identify those who might commit acts of murder-suicide. Defendant argues that these are quintessentially discretionary functions from which the County enjoys sovereign immunity. Def. Mem. at 3. In opposition, Plaintiff argues that it is not challenging Defendant's discretionary policies. Rather, Plaintiff is challenging the manner in which decisions were implemented. Pl. Resp. at 3.

The relevant portions of Count III state that Defendant breached its duty in the following ways:

> Alvarez and MDPD *negligently failed to adopt or implement* a sufficiently effective program of psychological screening

and monitoring of police officers to identify officers unfit to carry guns or remain in an active duty police status with firearm privileges. Am. Compl. at ¶ 48 (emphasis added).

Alvarez and MDPD *either negligently failed to create an early warning system or created an early warning system that was ineffective.* Am. Compl. at ¶ 48 (emphasis added).

Alvarez and MDPD's *negligent failure to set up an effective* early warning system identifying problem officers unfit for active duty status and firearm privileges constituted negligence which was the proximate cause of Wilson's death. Am. Compl. at ¶ 48 (emphasis added). As a direct and proximate cause of Alvarez and MDPD's *failure to set up an effective* early warning system, which identified problem officers, unfit for active duty status and firearm privileges, Storr killed Wilson with his MDPD-issued firearm. Am. Compl. at ¶ 49 (emphasis added).

■ Under Florida law, a governmental agency is immune from tort liability based upon actions that involve its discretionary functions. *Lewis v. City of St. Petersburg,* 260 F.3d 1260, 1266 (11th Cir.2001) (citing *Dep't of Health & Rehabilitative Servs. v. Yamuni,* 529 So.2d 258, 260 (Fla.1988)). The Supreme Court of Florida has explained that in determining whether sovereign immunity bars an action for an alleged breach of that duty, it is necessary to ascertain the character of the allegedly negligent governmental act or omission. Basic judgmental or discretionary governmental functions are immune from legal action. Operational acts, in contrast, are not protected by sovereign immunity. *Pollock v. Fla. Dep't of Highway Patrol,* 882 So.2d 928, 933 (Fla.2004) (citation omitted).

■ A discretionary function, under Florida law, is one in which "the governmental act in question involved an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning." *Henderson v. Bowden,* 737 So.2d 532, 538 (Fla.1999) (citation and internal quotation marks omitted). "An operational function, on the other hand, is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented." *Id.* (citation and internal quotation marks omitted). Florida's discretionary function exception to its general waiver of sovereign immunity "is grounded in the doctrine of separation of powers," and "it would be an improper infringement of separation of powers for the judiciary, by way of tort law, to intervene in fundamental decision making of the executive and legislative branches of government, including the agencies and municipal corporations they have created." *Kaisner v. Kolb,* 543 So.2d 732, 736–37 (Fla.1989).

■ An act is discretionary where all of the following conditions have been met: (1) the challenged act, omission, or decision necessarily involves a basic governmental policy, program, or objective; (2) the questioned act, omission, or decision is essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective; (3) the act, omission, or decision requires the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved; and (4) the governmental agency involved possesses the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision. *Lewis v. City of St. Petersburg,* 260 F.3d 1260, 1264 (11th Cir.2001) (citing

*Kaisner v. Kolb,* 543 So.2d 732, 736 (Fla. 1989)).

Taking all the allegations in the light most favorable to Plaintiff, Count III challenges *both* the MDPD's creation or adoption of a program of psychological screening and monitoring of police officers as well as the MDPD's decision regarding the implementation and operation of such a program or policy.

First, with respect to the MDPD's decision regarding the creation or adoption of such a program or policy, all four of the above criteria are answered in the affirmative. The MDPD's decision regarding whether or not to adopt or create a program or policy is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning. Thus, to the extent that Wilson challenges the reasonableness of basic policy decisions made by the MDPD, the discretionary function exception to the waiver of sovereign immunity applies and her claim is barred.

Second, with respect to the MDPD's implementation and operation of its program of psychological screening and monitoring of police officers the above four criteria are not all answered in the affirmative. First, did the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? In this instance, regarding the implementation and operation of a program, it did not. *Kaisner,* 543 So.2d at 737. The decision as to how to implement or operate a policy is secondary to the decision to create the policy. Second, is the questioned act, omission, or decision essential to the realization of that policy? In this instance, it was not. Different methods of implementation may exist that would protect those in a foreseeable zone of danger. *Id.* Third, did the act, omission, or decision require the exercise of basic policy evaluation, judgment, and ex-

pertise on the part of the governmental agency involved? In this instance, it did not. Methods of implementation of policy are at best a secondary concern. Plaintiff, in this case is asking the Court to consider the way in which this policy was implemented and not its fundamental wisdom. *Id.* Fourth, was the act lawfully authorized? In this instance it was. *Id.* The MDPD has the authority to implement policies for the monitoring of its officers.

As noted in *Kaisner,* when one or more of these questions is answered in the negative further inquiry may be required. 543 So.2d at 738. We thus look to the distinction between discretionary and operational functions. As in *Kaisner,* the act or omission in question here certainly involved a degree of discretion, but we cannot say that it is the type of discretion that needs to be insulated from suit. Intervention of the Court in this case will not entangle it in fundamental questions of public policy or planning. It will merely require this Court to determine if the MDPD should have acted in a manner more consistent with the safety of the individuals involved.

The issue here, as framed by Plaintiff, is the way the policies—assuming there were any—were implemented, which our courts may indeed review in a negligence action. The act or omission in this instance was operational and not discretionary. Thus, taking all the allegations in the light most favorable to Plaintiff, Count III concerns the implementation or operation of the MDPD's policies or plans. Thus, to the extent that Wilson challenges the implementation of a policy by the MDPD, the discretionary function exception to the waiver of sovereign immunity is inapplicable.

## CONCLUSION

Based on the foregoing, it is

ORDERED AND ADJUDGED, that to the extent that Wilson challenges the reasonableness of basic policy decisions made by the MDPD, that the MDPD "failed to adopt," "failed to create," and "fail[ed] to set up" an early warning system to detect problem officers, the discretionary function exception to the waiver of sovereign immunity applies and Defendant's Motion to Dismiss Count III is GRANTED. It is further,

ORDERED AND ADJUDGED to the extent that Wilson challenges the implementation of a policy by the MDPD, that the MDPD "failed to implement," "created an early warning system that was ineffective," or that "any early warning system to identify problem officers failed to work," the discretionary function exception to the waiver of sovereign immunity is inapplicable and Defendant's Motion to Dismiss is DENIED. It is further

ORDERED AND ADJUDGED that pursuant to this Order Plaintiff is instructed to file an Amended Complaint consistent with the findings of this Court within thirty (30) days.