PER CURIAM.
Appellant, Kris Lindquist (plaintiff), appeals the trial court’s dismissal with prejudice of those counts of his fourth amended complaint which are against appellee police officers Andrew Woronka and Stephen Lo-beck (defendants).[1] Claiming that defendants’ conduct deprived him of due process, plaintiff sought to impose individual liability on defendants, pursuant to 42 U.S.C. § 1983, for injuries he sustained in a traffic accident after being released from police custody. Because we find thát the officers did not have a special relationship with plaintiff requiring them to protect him at the time he was injured, and were not otherwise legally responsible for acting to create the dangerous situation that resulted in his injuries, we affirm the trial court’s dismissal.
On January 31, 1993, plaintiff was arrested by defendants while they were on duty with the City of Riviera Beach Police Department. At the time of his arrest, plaintiff was intoxicated, disoriented, confused, unaware of his surroundings, and otherwise incapacitated. After his arrest, defendants drove plaintiff approximately two miles to the City of Riviera Beach Police Department headquarters. There, pursuant to department policy, plaintiff was charged with disorderly conduct,[2] and then released with a notice to appear at a future court date.
After his release, while crossing the highway near the police station on foot, plaintiff was struck by a vehicle. As a result of the accident, plaintiff suffers- from' various permanent injuries including: paralysis of one side of his body; traumatic brain injury; vision impairment; loss of mobility and loss of ability to communicate. He requires full-time care.
Plaintiff does not allege that he was falsely arrested or falsely imprisoned. Rather, he claims the opposite — that defendants should have kept him in custody for his own protection because he was obviously inebriated. Alternatively, plaintiff alleges that the police officers should have driven him home. Plaintiff claims that defendants instead knowingly released him from the City of Riviera Beach Police Station, “an area more dangerous than the area- where [he] was arrested,” thus exposing him to increased danger.
The trial court dismissed the civil rights claims against defendants, after allowing *360 plaintiff three previous amendments, on the basis that the defendants’ action, or inaction, did not rise to the level of a constitutional violation, pursuant to 42 U.S.C. § 1983, which provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
When considering the propriety of the trial court’s dismissal of the complaint or counts of the complaint under §' 1983, this court must consider all the allegations contained in the complaint to be true. See Hughes v. Rowe, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); Harris v. Monds, 696 So.2d 446 (Fla. 4th DCA 1997). To state a cause of action for violation of § 1983, the plaintiff must allege that a person, acting under color of state law, deprived him of rights protected under the federal constitution, or federal laws. See Gomez v. Toledo, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Complaints alleging a violation of this statute should not be dismissed unless it is clear that plaintiff is entitled to no relief under any facts given in support of the claim. See Southern Alliance Corp. v. City of Winter Haven, 505 So.2d 489 (Fla. 2d DCA 1987) (citing Cruz v. Cardwell, 486 F.2d 550 (8th Cir.1973)).
The trial court relied on DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), in dismissing the complaint against defendants. In that case, after being returned to his father’s care by Winnebago County social services despite repeated warnings and signs that he was in danger, four-year-old Joshua DeShaney was beaten so severely by his father that he suffered permanent brain damage and was left profoundly retarded.
The DeShaneys brought an action under § 1983 against the county and individual social workers, alleging that the defendants deprived Joshua of his liberty without due process of law, in violation of his rights under the Fourteenth Amendment, “by failing to intervene to protect him against a risk of violence at his father’s hands of which they knew or should have known.” Id. at 193,109 S.Ct. at 1002.
The Supreme Court affirmed summary judgment in the defendants’ favor, holding that the defendants’ failure to protect Joshua from his father’s violence did not violate Joshua’s substantive due process rights. In reaching this conclusion, the Supreme Court recognized that:
Judges and lawyers, like other humans, are moved by natural sympathy in a case like this to find a way for Joshua and his mother to receive adequate compensation for the grievous harm inflicted upon them. But before yielding to that impulse, it is well to remember once again that the harm was inflicted not by the State of Wisconsin, but by Joshua’s father.
Id. at 202-03,109 S.Ct. at 1007.
The Supreme Court rejected the DeSha-neys’ claims that a “special relationship” existed between the .defendants and Joshua DeShaney such that they had a duty to provide protective services. The Supreme Court recognized, however, that “in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals ... because the person is unable ‘by reason of the deprivation of his liberty to care for himself_’” Id. at 199, 109 S.Ct. at 1005.
Taken together, [these cases] stand only for the proposition that when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.
Id. at 199-200, 109 S.Ct. at 1005. The Supreme Court found that this “special relationship” analysis had no applicability in the DeShaney case because Joshua was not in the state’s custody when he was injured by his father.
*361 In the substantive due process analysis, it is the State’s affirmative act of restraining the individual’s ¡freedom to act on his own behalf — through incarceration, institutionalization, or other similar restraint of personal liberty — which is the “deprivation of liberty” triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.
DeShaney, 489 U.S. at 200, 109 S.Ct. at 1006.
Recognizing that the circumstances may have imposed upon defendants the duty to act under state tort law, the Supreme Court concluded that the Due Process Clause of the Fourteenth Amendment “does not transform every tort committed by a state actor into a constitutional violation.” Id. at 202, 109 S.Ct. at 1006 (emphasis supplied). Because “the State had no constitutional duty to protect Joshua against his father’s violeriee, its failure to do so — though calamitous in hindsight — simply does not constitute a violation of the Due Process Clause.” Id.
Here, plaintiff was not in custody at the time of the accident, nor was his liberty otherwise restrained. Thus, we find that plaintiffs first theory of liability, based on a special relationship, does not apply. Rather the basis for liability, if any, would derive from the following statement in DeShaney:
While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. That the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father’s custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual’s safety by having once offered him shelter.
Id. at 201, 109 S.Ct. at 1006 (emphasis supplied). Although this alternative basis for liability under the due process clause is only dicta in DeShaney, subsequent federal court decisions have labeled it the “state-created danger” theory.[3]
In this ease, the allegations against defendants, that, after .properly arresting plaintiff they brought him to the police station and subsequently released him, are insufficient to state a cause of action under the state-created danger theory. This ease is a far cry from the ease most favorable to plaintiffs position, Kneipp v. Tedder, 95 F.3d 1199 (3d Cir.1996).
In Kneipp, the plaintiff was walking home with her husband, after midnight, when the two were stopped by the defendant police officers for creating a disturbance on a public highway. In an effort to separate the spouses, police sent the husband home and left the plaintiff on her own, despite the fact that the plaintiff was visibly drunk and unable to walk or care for herself. The plaintiff was found hours later at the bottom of an embankment across the street from her home, unconscious and suffering from hypothermia, resulting in severe and permanent brain damage.
The third circuit rejected a theory of liability predicated on a special, relationship because the plaintiff was not injured while in police custody, but found á jury could hold defendants hable under the state-created danger theory. The court found that there was sufficient evidence to show that the defendant police officers used their authority to create a dangerous situation or to make the plaintiff more vulnerable to danger than had they not 'intervened. In sending" her husband home, and allowing plaintiff to go home unescorted in a seriously intoxicated state in cold weather, they made her more vulnerable to harm. The court reasoned:
It is conceivable that, but for the intervention of the police, [the.plaintiffs husband] would have continued to escort his wife back to their apartment where she would have been safe. A jury could find that [the plaintiff] was in a worse position after the police intervened than she would have been if they had not done so. As a result of the. affirmative acts of the police offi *362 cers, the danger or risk of injury to [the plaintiff] was greatly increased.
Id. at 1209.
Here, plaintiff was initially arrested in the area of Blue Heron Boulevard, a multiple-lane highway, and then transported two miles to the City of Riviera Beach Police Department, which is also located on Blue Heron Boulevard. Although plaintiff alleges that defendants placed him in a more dangerous position by his arrest and release, the release of plaintiff at the Riviera Beach police station which happens to be located near an intersection, is insufficient, under the cases on which plaintiff relies, to impose civil rights liability on defendants.[4] No court has yet found a violation of an individual’s due process rights under similar facts. We have considered plaintiffs remaining arguments and find them to be without merit.
AFFIRMED.
GLICKSTEIN and KLEIN, JJ., and BARBARA J. PARIENTE, Associate Judge, concur.

. The counts against the City of Riviera Beach are still pending and are not involved in this appeal.

. Plaintiff alleges that the decision to charge him with disorderly conduct instead of disorderly intoxication was pursuant to a policy and procedure adopted by the City of Riviera Beach in order to avoid "proof problems” at trial. The allegations of a governmental policy, constituting a violation do not form the basis for imposing individual liability on the police officers.

. See Kneipp v. Tedder, 95 F.3d 1199 (3d Cir. 1996); Reed v. Gardner, 986 F.2d 1122 (7th Cir. 1993); Gregory v. City of Rogers, Arkansas, 974 F.2d 1006 (8th Cir.1992), and cases cited therein; see also Wyke v. Polk County School Bd., 129 F.3d 560, 567 (11th Cir.1997), and cases cited therein.

. There are two additional allegations. First, plaintiff alleges that Officer Lobeck told Officer Woronka to drive plaintiff home, if necessary, "to protect Kris Lindquist’s safety.” Second, plaintiff alleges that Officer Woronka went to the accident scene and "removed the identification from Kris Lindquist’s person” in order to "conceal the culpability of the Riviera Beach Police Department." Although these allegations are troublesome, they do not constitute a basis for imposing individual liability on the police officers under § 1983 as a violation of plaintiff's constitutional rights.