GERBER, J.
We grant the appellee’s motion for rehearing en banc. We withdraw our opinion issued July 20, 2011, and substitute the following opinion.
The issue in this appeal is whether the police, upon legally releasing an impaired person from custody at a police station or jail, thereafter owe a duty of care to that person when the police have not created any risk which that person may face upon release. We hold that the police do not owe a duty of care under those circumstances. Therefore, we affirm the circuit court’s dismissal of the third amended complaint in this case.
The third amended complaint alleges that Christopher Milanese, after a night of heavy drinking, got in his truck and began driving erratically. His cousin, who was following him in her car, called 911.
At 3:14 a.m., a City of Boca Raton police officer pulled Milanese over. Milanese appeared impaired. The officer took Milanese into custody, told his cousin to leave, and arranged for his truck to be towed. The officer then transported Milanese to the police station.
Between 3:27 and 3:41 a.m., the officer issued Milanese five traffic citations, none of which were for driving under the influence.
At 4:27 a.m., the officer called a cab for Milanese. At 4:29 a.m., the cab arrived at the station. At 4:30 a.m., the officer escorted Milanese to the front door of the station and released him. Milanese still was impaired. The cab driver did not see Milanese and left at 4:33 a.m.
At 5:20 a.m., Milanese was laying next to nearby railroad tracks when a train approached. The engineer blew the train’s horn. Milanese did not move. The train struck and killed Milanese. At the time of Milanese’s death, his blood alcohol level was .199.
*341 Milanese’s estate sued the City'for negligence. The estate alleged:
14.... The [City] had created a “special relationship” with [Milanese] when he was arrested and taken into custody. This “special relationship” included, among other things, [the duty] to insure the proper safety of [Milanese].
15. [The City] had an affirmative obligation to protect [Milanese] from harm while in [its] custody, and [was] responsible for his safety in releasing [Milanese] in a safe and reasonable manner. [The City was] negligent in releasing [Milanese], who was impaired, from the Boca Raton Police Department at 4:30 a.m. into the night without providing for his safety.
16. [The City was] negligent in not insuring that [Milanese] had transportation to go home. [The City was] negligent in allowing [Milanese] to wander through the night in a strange neighborhood while [Milanese] was impaired....
17. [The City was] negligent in having called a Yellow Cab for [Milanese] and not determining if the Yellow Cab ever arrived; in not escorting [Milanese] to the Yellow Cab; [and] in not having placed [Milanese] in the [Yellow Cab] — a presumably safe environment knowing that [Milanese] lived in another county.
18. [The City was] negligent in releasing [Milanese] to wander the streets of Boca Raton in an impaired and intoxicated condition. [The City] knew, or should have known, that by the releasing of [Milanese] at the time and place [it] did and in the condition he was in, it was foreseeable that [Milanese] would be placed in harm’s way — especially in light of the fact that an active railroad was located less than 50 feet from the rear of the police station.
The City moved to dismiss. The motion argued that the City owed no duty of care to Milanese for two reasons: (1) Milanese was not in custody at the time the train killed him; and (2) the City did not create a foreseeable zone of risk. The circuit court granted the motion. This appeal followed.
Our review is de novo. See Wallace v. Dean, 3 So.3d 1035, 1045 (Fla.2009) (“Appellate courts review decisions resolving motions to dismiss under a de novo standard where those motions are based on a claim that no legal cause of action exists as alleged in the complaint.”) (citations omitted). We must decide whether the police owed Milanese a duty of care under the facts alleged. See id. at 1046 (the duty of care requirement “poses a question of law that the court must answer before permitting a negligence claim to proceed before the trier of fact”) (citations omitted).
In deciding this issue, we must assume the complaint’s allegations as true and allow all reasonable inferences arising therefrom in the estate’s favor. See id. at 1042-43. We also must consider that, in the law enforcement context, a duty of care exists “when law enforcement officers become directly involved in circumstances which place people within a ‘zone of risk’ (1) by creating or permitting dangers to exist, (2) by taking persons into police custody, (3) detaining them, or (4) otherwise subjecting them to danger.” Id. at 1048 (emphasis, footnotes, citation, and other internal quotations omitted).
Here, accepting the estate’s allegations as true, we conclude that a duty of care did not exist upon Milanese’s release because the police: (1) did not create or permit dangers to Milanese to exist; (2) were no longer holding Milanese in custody; (3) were no longer detaining Milanese; and (4) did not otherwise subject Milanese to danger.
*342 We base our conclusion upon our precedent in Lindquist v. Woronka, 706 So.2d 358 (Fla. 4th DCA 1998), which involves very similar facts. There, two police officers arrested the plaintiff for disorderly conduct. At the time of the arrest, the plaintiff was “intoxicated, disoriented, confused, unaware of his surroundings, and otherwise incapacitated.” Id. at 359. The officers took the plaintiff to the police station. The officers later released the plaintiff with a notice to appear at a future court date. After being released, the plaintiff was crossing a highway near the police station when a vehicle struck and injured him. The plaintiff sued the officers for a civil rights violation, claiming that the police “should have kept him in custody for his own protection because he was obviously inebriated.” Id. Alternatively, the plaintiff alleged, “the police officers should have driven him home.” Id. According to the plaintiff, the police “knowingly released him from [the station], ‘an area more dangerous than the area where [he] was arrested,’ thus exposing him to increased danger.” Id. The circuit court dismissed the plaintiffs civil rights claim “on the basis that the [officers’] action, or inaction, did not rise to the level of a constitutional violation, pursuant to 42 U.S.C. § 1983.” Id. at 360.
We affirmed on two grounds. First, we concluded that the plaintiffs theory of liability based on being taken into custody did not apply. We reasoned that “[the] plaintiff was not in custody at the time of the accident, nor was his liberty otherwise restrained.” Id. at 361. The same reasoning eliminates the second and third grounds for which “zone of risk” liability may be considered in this case. Wallace, 3 So.3d at 1048.
Second, we concluded in Lindquist that the plaintiffs “state-created danger” theory of liability did not apply either. That theory derives from the following statement in DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989):
While the State may have been aware of the dangers that [the plaintiff] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. That the State once took temporary custody of [the plaintiff! does not alter the analysis, for when it [released him], it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual’s safety by having once offered him shelter.
Lindquist, 706 So.2d at 361 (quoting DeShaney, 489 U.S. at 201, 109 S.Ct. 998) (emphasis partially added in Lindquist and partially added here). After considering the “state-created danger” theory of liability, we concluded that the plaintiffs allegations in Lindquist were insufficient to satisfy that theory, reasoning:
Although plaintiff alleges that defendants placed him in a more dangerous position by his arrest and release, the release of plaintiff at the ... police station which happens to be located near an intersection, is insufficient ... to impose civil rights liability on defendants. No court has yet found a violation of an individual’s due process rights under similar facts.
Lindquist, 706 So.2d at 362 (footnote omitted).
The “state-created danger” theory which we discussed in Lindquist is very similar, if not identical, to the first and fourth grounds for “zone of risk” liability which the estate seeks to apply here. Wallace, 3 So.3d at 1048. However, those “zone of risk” grounds do not apply here either. The release of Milanese at the police sta *343 tion, which happens to be located near railroad tracks, is insufficient to impose a duty of care upon the police. The police did not create Milanese’s impaired condition or the surroundings into which he was released. See McCain v. Fla. Power Corp., 593 So.2d 500, 502 (Fla.1992) (“The duty element of negligence focuses on whether the defendant’s conduct foresee-ably created a broader ‘zone of risk’ that poses a general threat of harm to others.”) (emphasis added; citations omitted). The police simply did what they were obligated to do after issuing Milanese’s traffic citations — they released him from custody at the police station. While the police may have been aware of the dangers which Milanese faced upon his release, the police played no part in creating those dangers, nor did the police do anything to render Milanese more vulnerable to those dangers.
In sum, the police placed Milanese in no worse position than if they had not acted at all. Thus, contrary to the dicta which the estate and the dissent quote from Henderson v. Bowden, 787 So.2d 532 (Fla.1999), the police did not “eject [Milanese] into the danger of a street or railroad yard.” Id. at 537 (citation omitted). Rather, the police attempted to place Milanese in a better position by calling him a cab when they had no duty to do so. The fact that Milanese for some reason did not enter the cab should not expose the police to liability.
The cases upon which the estate relies to support its arguments are distinguishable. Unlike this case and Lindquist, none of those cases involve a situation in which a person is simply released from custody at a police station. See Wallace, 3 So.3d at 1040 (deputies undertaking a safety check on an unresponsive woman placed her in a “zone of risk” by rebuffing her neighbors’ suggestion that she was in a diabetic coma and by assuring neighbors that she was simply asleep and did not need an ambulance or medical attention); Henderson, 737 So.2d at 536 (deputies, after conducting a traffic stop of a vehicle, more likely than not created a “zone of risk” for the vehicle’s passengers by directing the vehicle’s intoxicated driver to drive to a nearby store); Kaisner v. Kolb, 543 So.2d 732, 734 (Fla.1989) (police officer created a “zone of risk” for the plaintiff by directing him to stand between his vehicle and a police cruiser during a traffic stop, thus depriving him of his ability to protect himself from oncoming traffic); Walston v. Fla. Highway Patrol, 429 So.2d 1322, 1324 (Fla. 5th DCA 1983) (jury issue was presented regarding whether troopers caused an increased risk to an intoxicated person by allowing him to stand between cars during a traffic stop without warning him of any danger).
The estate also argues that section 316.193(9), Florida Statutes (2007), applies to this case. We disagree. Section 316.193(9) provides that the police may not release a person whom they arrest for driving under the influence until: (a) the person was no longer under the influence; (b) the person’s blood-alcohol level or breath-alcohol level was less than 0.05; or (c) until eight hours elapsed from the time of the arrest. § 316.193(9), Fla. Stat. (2007). Here, however, the police, for whatever reason, did not arrest Milanese for driving under the influence. The police cannot be held liable for that discretionary judgment. See Everton v. Willard, 468 So.2d 936, 938 (Fla.1985) (“There has never been a common law duty of care owed to an individual with respect to the discretionary judgmental power granted a police officer to make an arrest and to enforce the law.”).
The dissent argues that the “undertaker’s doctrine,” as most recently articulated *344 in Wallace, applies to this case. We disagree based on the manner in which the estate pled the third amended complaint. In Wallace, the complaint alleged that two deputies responded to a 911 call requesting a safety check for an unresponsive woman. When the deputies arrived, they found the woman breathing but unresponsive to their efforts to awaken her. The deputies assured the woman’s concerned neighbors that the woman was merely sleeping and that it was unnecessary to call an ambulance. The deputies then left. The neighbors relayed this information to the woman’s out-of-state daughter, who also relied on the deputies’ assurances that her mother needed no further assistance. The next day, the neighbors checked on the woman again and found her in the same position. This time, the neighbors called an ambulance which transported the woman to a hospital. Ultimately, it was determined that the woman had been in a diabetic coma and she died several days later without having regained consciousness. Based on those allegations, our supreme court concluded that the deputies owed a duty of care to the woman pursuant to the “undertaker’s doctrine”:
As alleged in the complaint, the conduct of these deputies placed [the woman] in a readily recognizable zone of risk. [The deputies] responded to the scene, entered a home, engaged the unconscious resident, provided an assessment of her safety, and, further, assured concerned third parties that she was simply asleep and did not need medical attention. This alleged behavior satisfies the requirements of the undertaker’s doctrine because the deputies, in a position of authority, increased the risk of harm that the decedent faced by inducing third parties — who would have otherwise rendered further aid (and actually requested that the deputies provide additional assistance, but were rebuffed)— to forebear from doing so.
3 So.3d at 1052 (emphasis added; citations omitted).
The highlighted reasoning does not apply to this case. Although the third amended complaint alleged that the police did not escort Milanese to the cab or place him in the cab, the estate does not explain how such inaction increased the risk of harm which Milanese faced. To overcome that omission, the dissent speculates that the police, by calling a cab for Milanese, may have dissuaded him from arranging for responsible transportation of his own choosing, such as his cousin whom the police ordered to leave at the roadside. However, the third amended complaint did not allege these possible facts as a basis to establish the duty of care. See Third Amended Complaint at ¶¶ 14-18. We must view the complaint as it is pled, not how it could have been pled. See Edwards v. Landsman, 51 So.3d 1208, 1213 (Fla. 4th DCA 2011) (“In reviewing an order granting a motion to dismiss, this court’s gaze is limited to the four corners of the complaint.”) (citation and internal quotations omitted). We also are prohibited from granting the estate leave to file a fourth amended complaint when it did not request the circuit court’s leave to do so. See Stander v. Dispoz-O-Prods., Inc., 973 So.2d 603, 605 (Fla. 4th DCA 2008) (“[A] party who does not seek to amend in the trial court cannot raise the issue of amendment for the first time on appeal.”).
For the above reasons, the complaint has not met the minimal threshold legal requirement to survive dismissal. See Wallace, 3 So.3d at 1046 (“A duty of care is a minimal threshold legal requirement for opening the courthouse doors.”) (citation and internal quotations omitted). We affirm.

Affirmed.

*345 MAY, C.J., GROSS, DAMOORGIAN, CIKLIN and CONNER, JJ„ concur.
STEVENSON, J., dissents with opinion in which WARNER, POLEN, TAYLOR and LEVINE, JJ., concur.
HAZOURI, J., recused.