STEVENSON, J.,
dissenting.
I respectfully dissent. I would reverse the final judgment of dismissal and allow the case to proceed. The gravamen of the estate’s claim is that the police placed Milanese in a zone of risk by taking him into custody and then releasing him in a manner which created an unreasonable and foreseeable risk of harm considering Milanese’s physical condition (“impaired, drunk and inebriated”), the time of day (the dark hours of early morning), and the location of his release (near active railroad tracks). Thus, the estate claims that a duty of care arose under Florida tort law. A duty of care is “a minimal threshold legal requirement for opening the courthouse doors.” McCain v. Fla. Power Corp., 593 So.2d 500, 502 (Fla.1992) (footnote omitted). Here, the estate’s complaint met the minimum threshold and should not have been dismissed for failure to establish a duty of care on the part of the police.
The two leading cases in Florida explaining duty of care are Kaisner v. Kolb, 543 So.2d 732 (Fla.1989), and McCain v. Florida Power Corp., 593 So.2d 500 (Fla.1992). In Kaisner, the supreme court stated:
Where a defendant’s conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon [the] defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses....
We see no reason why the same analysis should not obtain in a case in which the zone of risk is created by the police.
543 So.2d at 735-36 (citations omitted). In McCain, the court further expounded on the concept of “zone of risk” as it relates to the duty of care:
The duty element of negligence focuses on whether the defendant’s conduct foreseeably created a broader “zone of risk” that poses a general threat of harm to others. See Kaisner, 543 So.2d at 735 (citing Stevens v. Jefferson, 436 So.2d 33, 35 (Fla.1983))....
... Foreseeability clearly is crucial in defining the scope of the general duty placed on every person to avoid negligent acts or omissions. Florida, like other jurisdictions, recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others....
The statute books' and case law, in other words, are not required to catalog and expressly proscribe every conceivable risk in order for it to give rise to a duty of care. Rather, each defendant who creates a risk is required to exercise prudent foresight whenever others may be injured as a result. This requirement of reasonable, general foresight is the core of the duty element. For these same reasons, duty exists as a matter of law and is not a factual question for the jury to decide: Duty is the standard of conduct given to the jury for gauging the defendant’s factual conduct. As a corollary, the trial and appellate courts cannot find a lack of duty if a foreseeable zone of risk more likely than not was created by the defendant.
593 So.2d at 502-03 (citations and footnotes omitted; emphasis added).
Factually, this is a case of first impression in the reported cases in Florida. In regard to the police, “[a] special tort duty *346 ... arise[s] when law enforcement officers become directly involved in circumstances which place people within a ‘zone of risk ’ [1] by creating or 'permitting dangers to exist, [2] by taking persons into police custody, [3] detaining them, or [4] otherwise subjecting them to danger.” Wallace v. Dean, 3 So.3d 1035, 1048 (Fla.2009) (footnotes omitted). These factors have been determined to establish the special relationship between the police and the injured party necessary to defeat the so-called “public-duty doctrine.” Id. Under the public-duty doctrine, no duty extends to the public generally for the governmental activities of enforcement of laws and the protection of public safety. Id. (citing Trianon Park Condo. Ass’n v. City of Hialeah, 468 So.2d 912, 919-21 (Fla.1985)). By alleging a special relationship, the plaintiff is allowed to plead an exception to the public-duty doctrine.
Relying on the various factors discussed in Wallace and the authorities cited therein, several other cases have found police liability for ordinary negligence in a variety of factual contexts where there has been a “special relationship” between the police and the victim, a zone of risk has been created and a duty of care has arisen. See Wallace, 3 So.3d at 1040 (deputies undertaking a safety check on an unresponsive woman placed her in a “zone of risk” by rebuffing her neighbors’ suggestion that she was in a diabetic coma and by assuring neighbors that she was simply asleep and did not need an ambulance or medical attention); Henderson v. Bowden, 737 So.2d 532, 536 (Fla.1999) (deputies, after conducting a traffic stop of a vehicle, more likely than not created a “zone of risk” for the vehicle’s passengers by directing the vehicle’s intoxicated driver to drive to a nearby store); Kaisner v. Kolb, 543 So.2d 732, 734 (Fla.1989) (police officer created a “zone of risk” for the plaintiff by directing him to stand between his vehicle and a police cruiser during a traffic stop, thus depriving him of his ability to protect himself from oncoming traffic); Walston v. Fla. Highway Patrol, 429 So.2d 1322, 1324 (Fla. 5th DCA 1983) (jury issue was presented regarding whether troopers caused an increased risk to an intoxicated person by allowing him to stand between cars during a traffic stop without warning him of any danger). This case differs from the preceding cases because the negligence here is focused on the special relationship which arose when Milanese was taken into police custody and the zone of risk created by the alleged negligent manner in which plaintiff was released from that custody.
Lindquist v. Woronka, 706 So.2d 358 (Fla. 4th DCA 1998), the case which the majority cites as “precedent,” has somewhat similar facts to the instant case but presents a different legal issue.[1] Lindquist was based on a civil rights claim pursuant to 42 U.S.C. § 1983, and the plaintiff had sought to impose civil liability on the officers individually. “To state a cause of action for violation of § 1983, the plaintiff must allege that a person, acting under color of state law, deprived him of rights protected under the federal constitution, or federal laws.” Id. at 360. Liability under the Due Process Clause is narrow and not meant as a substitute for tort law. See, e.g., DeShaney v. Winneba *347 go Cnty. Dep’t of Social Servs., 489 U.S. 189, 202, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (noting that “the Due Process Clause ... does not transform every tort committed by a state actor into a constitutional violation”). Thus, Lindquist simply did not address the negligence issue presented by the instant case. Florida tort law, rather than federal constitutional law, is instructive. Further diluting the persuasiveness of Lindquist, our court records indicate that, in Lindquist, counts against the City of Riviera Beach for negligence based on state tort law remained pending below and were not involved in the appeal.
Nevertheless, on the surface, the principle of zone of risk under Florida negligence law and the state-created danger test under federal law are somewhat similar. But, using the state-created danger test in its most narrow and literal sense has led the majority to erroneously conclude that, under state tort law, the police could not have created a zone of risk in this case because they did not create the railroad tracks or the proximity of the station to those tracks or the train or the darkness of night or Milanese’s intoxicated condition. In that respect, strict application of the state-created danger test may work in the ease of a due process claim for a constitutional violation, but it fails with regard to negligent conduct predicated on Florida tort law, which ‘“is categorically beneath the threshold of constitutional due process.’ ” Sitzes v. City of W. Memphis Ark., 606 F.3d 461, 466 (8th Cir.) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)), cert. denied, _ U.S. _, 131 S.Ct. 828, 178 L.Ed.2d 557 (2010). Rather, the application of state negligence principles would acknowledge the reasonableness and logic in the estate’s argument that the foreseeable danger Milanese faced was in fact created by the police due to the manner in which he was released from police custody in view of all of the circumstances. But for his release in that manner, Milanese would not have faced those dangers at that time and at that place.
So it is with the directives of McCain and other Florida tort law authority that we begin our analysis of this case. Moreover, we start by pointing out that the issue in this case is not whether the police should have arrested Milanese for driving under the influence or kept Milanese in police custody, since those are clearly discretionary acts for which sovereign immunity would bar a cause of action. See Everton v. Willard, 468 So.2d 936, 939 (Fla.1985). The question here is whether there were foreseeable risks created by the manner in which Milanese was released from police custody and whether the police effectuated the release in a reasonable manner in light of those risks because “as the risk grows greater, so does the duty, because the risk to be perceived defines the duty that must be undertaken.” Henderson, 737 So.2d at 535 (citing J.G. Christopher Co. v. Russell, 63 Fla. 191, 58 So. 45 (1912)).
Having been removed from his car in the wee hours of the morning, ostensibly because he was too drunk to continue driving, Milanese was taken into police custody and his vehicle was towed. Milanese’s cousin, who was following close by, was told to leave. Milanese was taken to a police station and was written a series of traffic tickets. After the tickets were written, the police called a taxi cab for the intoxicated Milanese and escorted him to the front door of the police station. It was still in the dark hours of early morning. The cab arrived, but the driver didn’t see Milanese anywhere. Milanese wandered off and was struck by a train and killed. The police station was just a short distance from an active railroad track. The estate *348 makes the legitimate argument that it is reasonably foreseeable that an “impaired, drunk and inebriated” person would be unable to locate a taxi cab in the dark and at an unfamiliar location without some assistance. That the same intoxicated person without a sure and safe method of transportation might wander off in an unfamiliar area with active railroad tracks nearby and be injured in some manner (here by a train) is also far from unforeseeable.
The majority opinion’s statement that “the police placed Milanese in no worse position than if they had not acted at all” is mainly speculation, or at best, an improper factual inference least favorable to sustaining the estate’s cause of action. Because the intoxicated Milanese could have been injured at some other time, in some other place, and by some other means is mostly irrelevant. And, as the estate states in its initial brief, there is at least the possible inference as well “that had [Milanese] not been arrested he might have been injured in a lesser manner while continuing to drive” or that his “blood alcohol level continued to rise ..., and that it was higher when he was released than at the time he was arrested.” The estate’s argument is simply that but for the release of the intoxicated Milanese in the alleged manner, time and place, he would not have been exposed to the actual risks which caused his death.
There is also the high probability and reasonable inference that if Milanese had not been stopped by the arresting officers for the stated “traffic violations,” he would have been stopped by some other police officers for driving under the influence. Milanese’s cousin reported his erratic driving and extremely intoxicated condition by calling 911. Because the arresting officers stopped Milanese before his cousin had even completed speaking with the 911 dispatcher, it is unlikely that the stop was based on that call. Had Milanese been stopped by some other officers and charged with DUI, he would have received the benefit of the protections of section 316.193(9), Florida Statutes (2007), which provides that a person who is arrested for a DUI may not be released from custody until (1) that person is no longer under the influence of intoxicating substances and affected to the extent that his or her normal faculties are impaired; (2) the person’s blood-alcohol level or breath-alcohol level is less than 0.05; or (3) 8 hours have elapsed from the time the person was arrested. Under this scenario, which is reasonable to infer from the facts stated in the complaint, it could not be said that the arresting officers “placed Milanese in no worse position than if they had not acted at all” as the majority claims. Thus, whether Milanese would have been injured to a lesser degree, or not at all, if the police had not acted should be a matter for the fact-finder to determine.
The majority also concludes that there was no zone of risk created by the police, and thus no duty of care, because the injury occurred after Milanese was released from custody. On this point, the trial judge correctly recognized in her final order that “whether or not the Decedent was in police custody at the time of his death is not dispositive in a ‘zone of risk’ analysis.” In Wallace, the court reminded that “as we clarified years ago, custody is but one means through which the police may create a special duty of care with regard to an individual.” 3 So.3d at 1048 n. 22. By taking Milanese into custody, the police exercised a degree of control over his circumstances at the scene for better, or as alleged in the complaint, for worse. Having altered the status quo of Milanese’s situation as to time and place, the police owed a duty of care in their handling of his release from that custody as *349 well. As the complaint alleges, the police called a taxi cab for the “impaired, drunk and inebriated” Milanese but never even determined if the cab had ever arrived. The intoxicated Milanese was merely escorted to the front door of the station to find the cab if he could. Thus, the theory of liability here is based on both the second [taking persons into custody ] and fourth [otherwise subjecting them to danger] grounds of relief discussed in Wallace, and related cases.

The “Undertaker’s Doctrine”

The estate also relied upon the “undertaker’s doctrine” as a basis for relief. In Wallace, our supreme court held that a duty of care may arise against the police pursuant to the traditional common law tort principle referred to as “the undertaker’s doctrine.” 3 So.3d at 1040. There, two Marion County Sheriffs deputies responded to a 911 call requesting a safety check for an unresponsive woman. When the deputies arrived, they found the woman breathing but unresponsive to their efforts to awaken her. The deputies assured the woman’s concerned neighbors that the woman was merely sleeping and that it was unnecessary to call an ambulance, and then they left. The neighbors relayed this information to the woman’s out-of-state daughter, who also relied on the deputies’ assurances that her mother needed no further assistance. The next day, the neighbors checked on the woman again and found her in the same position. This time, an ambulance was called to the scene and the woman was transported to a hospital. Ultimately, it was determined that the woman had been in a diabetic coma and she died several days later without having ever regained consciousness. The court found that the deputies owed a duty of care to the then-unconscious woman pursuant to the common law tort principle called “the undertaker’s doctrine.”
The Wallace court reasoned:
Here, the Sheriffs deputies did not attempt to enforce any law and certainly were not engaged in the protection of the general public; instead they affirmatively sought to provide a service (a 911 safety cheek) to a specific individual, Brenda Wallace (the decedent).... Therefore, the public-duty doctrine associated with category II of Trianon, and any exceptions thereto, are inapposite to the case at bar. We thus consider whether the Sheriff owed the decedent a common-law duty of care pursuant to traditional principles of tort law without having to engage in any inquiry concerning the public-duty doctrine or whether a “special duty” or “special relationship” existed between the Sheriff and the decedent. ...
[[Image here]]
This Court has long adhered to the common-law doctrine that
“[i]n every situation where a man undertakes to act, or to pursue a particular course, he is under an implied legal obligation or duty to act with reasonable care, to the end that the person or property of others may not be injured by any force which he sets in operation, or by any agent for which he is responsible. If he fails to exercise the degree of caution which the law requires in a particular situation, he is held liable for any damage that results to another, just as if he had bound himself by an obligatory promise to exercise the required degree of care.... [E]ven ‘where a man interferes gratuitously, he is bound to act in a reasonable and prudent manner according to the circumstances and opportunities of the case.’ ”
*350 Banfield v. Addington, 104 Fla. 661, 140 So. 893, 896 (1932) (citations omitted) (emphasis supplied) (citing 1 Thomas A. Street, Foundations of Legal Liability 92 (1906)) (quoting Flint & Walling Mfg. Co. v. Beckett, 167 Ind. 491, 79 N.E. 503, 506 (1906)). We have continued to apply this doctrine throughout the years.
3 So.3d at 1049-50.
Applying these principles, the Wallace court went on to conclude:
As alleged in the complaint, the conduct of these deputies placed [the deceased] in a readily recognizable zone of risk. These agents of the Sheriff responded to the scene, entered a home, engaged the unconscious resident, provided an assessment of her safety, and, further, assured concerned third parties that she was simply asleep and did not need medical attention. This alleged behavior satisfies the requirements of the undertaker’s doctrine because the deputies, in a position of authority, increased the risk of harm that the decedent faced by inducing third parties — who would have otherwise rendered further aid (and actually requested that the deputies provide additional assistance, but were rebuffed) — to forebear from doing so. See Restatement (Second) of Torts §§ 323-324A; see also Keeton, supra, § 56, at 378 (“If there is no duty to go to the assistance of a person in difficulty or peril, there is at least a duty to avoid any affirmative acts which make his situation worse.... [I]f the defendant does attempt to aid him, and takes charge and control of the situation, he is regarded as entering voluntarily into a relation which is attended with responsibility.”).
3 So.3d at 1052.
Based on the reasoning in Wallace, the “undertaker’s doctrine” could be applicable to this case as well. Like the deputies in Wallace, the police in the instant case were not attempting to enforce any law and were not engaged in the protection of the general public when they affirmatively sought to provide a specific service (arranging for transportation) for a specific individual (Milanese). Here, the complaint alleged that the police undertook to call a taxi cab and arrange for the intoxicated Milanese’s transportation. The “impaired, drunk and inebriated” Milanese was released in a strange location with active railroad tracks less than fifty feet away and escorted to the front door of the police station to go into the darkness of early morning and find the taxi cab which the police had called. Whether Milanese was given the opportunity to arrange for responsible transportation of his own choosing, such as his cousin who was ordered to leave, is not clear from the complaint; any inference in that regard at this early stage of the proceedings would have to be drawn in favor of sustaining the cause of action. Having made the decision to take responsibility for the transportation needs of the “impaired, drunk and inebriated” Milanese, the police were required to act with reasonable care.
“There may be no duty to take care of a man who is ill or intoxicated, and unable to look out for himself; but it is another thing entirely to eject him into the danger of a street or railroad yard; and if he is injured there will be liability. But further, if the defendant does attempt to aid him, and takes charge and control of the situation, he is regarded as entering voluntarily into a relation which is attended with responsibility.”
Henderson, 737 So.2d at 537 (quoting with approval, W. Page Keeton, et al., Prosser and Keeton on the Law of Torts, § 53, at 378 (5th ed. 1984)).
This court should conclude that, more likely than not, the police created a fore *351 seeable zone of risk that Milanese might be injured if their duty of care attendant to his release from custody was not discharged in a reasonable manner. Whether the police acted with ordinary care in the manner in which Milanese was released, considering all of the circumstances that may be developed after the case proceeds further, should be left to a fact-finder. The instant case, at this early stage of the proceedings, should be allowed to continue.
WARNER, POLEN, TAYLOR and LEVINE, JJ., concur.

. Lindquist differs factually in several ways. The plaintiff in Lindquist was arrested as a pedestrian in the area of Blue Heron Boulevard, a multiple-lane highway, and was released as a pedestrian about two miles away at the City of Riviera Beach Police Department headquarters, which is also on Blue Heron Boulevard. 706 So.2d at 359. Further, Lindquist claimed that the police "should have kept him in custody” or alternatively "should have driven him home." Id. No such claims are made by the estate in the instant case.